IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TWIN CITY FIRE INSURANCE** | * | |
| **COMPANY,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:22-cv-00769-BAH |
| **AXIS INSURANCE COMPANY,** | | |
| | * | |
| *Defendant.* | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Twin City Fire Insurance Company ("Twin City"), filed the present action on March 31, 2022, against Defendant, AXIS Insurance Company ("AXIS"), seeking declaratory relief regarding (1) Defendant's alleged obligation to reimburse Plaintiff for costs paid to defend an underlying personal injury lawsuit; and (2) Defendant's alleged obligation to indemnify one of Plaintiff's insureds in connection with the same. (ECF No. 1). Plaintiff then filed an Amended Complaint on July 25, 2022, retracting its indemnity claim. (ECF No. 21). United States District Judge Lydia K. Griggsby subsequently referred the case to the undersigned for discovery disputes on September 29, 2023, before the case was reassigned to United States District Judge Brendan A. Hurson for all proceedings on October 23, 2023. (ECF No. 58). Presently before the Court is Defendant's Motion to Compel Production of Documents That Plaintiff, Twin City Fire Insurance Company and Non-Party Bodie, Dolina, Hobbs, Friddel & Grenzer, P.C. Have Withheld on Grounds of Attorney Work Product and Common Interest Doctrine (the "Motion"). (ECF No. 60). The Court has considered the Motion, Plaintiff's Opposition thereto (ECF No. 61), and Defendant's Reply (ECF No. 63). The Court has also conducted its own *in camera* review of the

disputed documents. *See* (ECF No. 64). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Defendant's Motion is **DENIED**.

## I. BACKGROUND

### A. General Background

In March 2016, Atlas West End Silver Hill, LLC ("Atlas") entered into a property management agreement with Gates Hudson & Associates, Inc. ("Gates Hudson") regarding residential property in Prince George's County, Maryland, as owner and manager, respectively. (ECF No. 21 at 3).[1] AXIS then issued a commercial general liability policy providing coverage to Atlas, and Zurich American Insurance Company ("Zurich") issued Atlas' excess liability policy. (ECF No. 60-1 at 3–4).

A lawsuit was filed in August 2020 against Gates Hudson and Atlas alleging damages from carbon monoxide poisoning at the residences managed by Gates Hudson and owned by Atlas, which the parties label as the "Padmore Action." *Id.* at 4. In approximately August 2021, Plaintiff retained Lou Grenzer of Bodie, Dolina, Hobbs, Friddell & Grenzer, P.C. ("Bodie") to represent Gates Hudson in the Padmore Action and, just prior to a mediation in the Padmore Action, retained Ezra Gollogly of Kramon & Graham, P.A. to act as Plaintiff's coverage counsel. *Id.* According to Defendant, Kristin Gallagher of the Kennedys law firm advised Gollogly that she represented AXIS as coverage counsel on January 12, 2022. *Id.* at 5.

Plaintiff initially paid Grenzer of Bodie to provide the underlying defense to Gates Hudson in the Padmore Action, but then filed a lawsuit on January 13, 2022, alleging that Plaintiff had no duty to defend or indemnify Gates Hudson for the relief sought in the Padmore Action. *Id.* at 4–

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document.

5, 14. Following a private mediation on January 13, 2023, at which no settlement was reached, the Padmore Action ultimately settled in follow up with that mediator on February 10, 2022, subject to finalizing a written settlement agreement among the parties, before being dismissed in May 2022 once that settlement agreement was finalized and signed. *Id.* at 4–5. As part of that settlement, both Plaintiff and Gates Hudson contributed funds to the settlement, but reserved their rights to proceed against Defendant for reimbursement. (ECF No. 61 at 6). Plaintiff filed the present lawsuit against Defendant in the interim in March 2022, raising a reimbursement claim for the defense costs incurred by Plaintiff in defending Gates Hudson. *Id.* at 5.

    B. <u>The Present Discovery Dispute</u>

Defendant alleges that Grenzer's communications with Plaintiff and with Gollogly, both before and after the Padmore Action settled, are critical to adjudicating this case because they demonstrate that Plaintiff failed to preserve its rights to seek reimbursement from AXIS as part of the Padmore Action settlement. *Id.* at 6. Accordingly, Defendant served a request for production of such documents to Plaintiff in October 2022. (ECF No. 61 at 7). Plaintiff avers that it collected and produced some documents in response to the discovery request, withheld others, and informed Defendant as much via a privilege log detailing the basis for its withholding on November 16, 2022. *Id.* at 7–8. Defendant did not object to Plaintiff's privilege log designations until August 2023 after Defendant issued a subpoena to Bodie asking for production of the same documents Plaintiff had already withheld or produced. *Id.* at 8. Specifically, Defendant's subpoena requested that Bodie produce Grenzer's communications with Plaintiff concerning the Padmore Action negotiation and settlement from December 1, 2021, to March 31, 2022. (ECF No. 60-1 at 6). The subpoena also requested Grenzer's communications with Gollogly concerning the same subject

for the same time period as well as "similar communications with Zurich and defense counsel retained by AXIS for Atlas, Jennifer King of DeCaro Doran." *Id.*

Bodie produced no documents in response to the subpoena. Rather, Bodie refused to produce Grenzer's communications with Plaintiff and Gollogly on the ground that such communications are "privileged communications or subject to common-interest work product protection." *Id.* at 7. Plaintiff then provided Defendant with a revised privilege log on September 8, 2023, that identified 115 withheld communications involving Bodie. *Id.* Of those 115 communications, Defendant seeks compulsion of 43: (1) 10 emails between Grenzer and Gollogly or Plaintiff, dated January 10, 2022, through January 12, 2022, relating to "global mediation of underlying case and Twin City's and Gates Hudson's mutual interest in AXIS and Zurich resolving claims against Gates Hudson" (the "Pre-Mediation Emails"); (2) 11 emails between Grenzer and Gollogly or Plaintiff dated January 13, 2022, through February 10, 2022, with the same description (the "Post-Mediation/Pre-Settlement Emails"); and 22 emails between Grenzer and Gollogly or Plaintiff dated February 20, 2022, through March 29, 2022, relating to "drafting of the underlying settlement agreement and Twin City and Gates Hudson's interest in pursuing AXIS and Zurich for reimbursement of defense and indemnity costs" (the "Settlement Agreement Drafting Emails). *Id.* at 8–9.

## II.   LEGAL STANDARD

"As set forth in Rule 26(b)(3), the work product doctrine prohibits a party from obtaining discovery of materials prepared in anticipation of litigation, absent a showing both of substantial need and of an inability to obtain, without undue hardship, the substantial equivalent of the materials sought." *LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings*, 209 F.R.D. 112, 115 (D. Md. 2002). Determining whether certain materials constitute protected work product requires

4

assessing "whether in light of the nature of the documents and the particular facts of a given case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation or whether they must be deemed to have been prepared in the ordinary course of the company's business." *Id.* (citing *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D. Md. 1980)); *see also Paice, LLC v. Hyundai Motor Co.*, 302 F.R.D. 128, 133 (D. Md. 2014) ("[T]he proponent of the privilege carries the burden of demonstrating that the documents at issue were created 'because of' the present litigation."). "In satisfying this burden, a party cannot rely on conclusory statements in its memoranda; rather, as in the case of attorney-client privilege, the proponent must provide specific factual support for its assertions." *Paice*, 302 F.R.D. at 133.

"The joint defense privilege," or common interest privilege, is "an extension of the attorney-client privilege" aimed at protecting "communications between parties who share a common interest in litigation." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). The Fourth Circuit has determined that it also applies to work product. *In Re Grand Jury Subpoenas 89-3 and 89-4*, 902 F.2d 244, 249 (4th Cir. 1990). The underlying purpose of the privilege is that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other in order to more effectively prosecute or defend their claims without waiving privileged attorney-client communications." *LaSalle*, 209 F.R.D. at 116. "To invoke the privilege, the party must show that there is a shared 'common interest about a legal matter' . . . the parties to the common interest are not required to reduce their agreement to writing, so long as there are indicators of a 'joint strategy' sufficient to establish that the parties are 'clearly corroborating in advance of litigation.'" *United States v. Elbaz*, 396 F. Supp. 3d 583, 598 (D. Md. 2019) (quoting *Hunton & Williams v. U.S. Dep't of Just.*, 590 F.3d 272, 284–85, 287 (4th Cir. 2010)). Similar to the work product doctrine, "Conclusory claims that a common interest

in litigation exists" are insufficient to establish the common interest privilege "in the absence of a showing that the parties were pursuing a common legal strategy." *Id.* (citing *Sheet Metal Workers Int'l Assoc. v. Sweeney*, 20 F.3d 120, 124–25 (4th Cir. 1994)). Moreover, "The privilege protects documents shared among the parties after the common interest was formed, but not before." *Id.*

### III.     DISCUSSION

#### A.     The Relevance of the Disputed Documents

Plaintiff argues in its Opposition that the requested communications are not relevant to AXIS' asserted defenses such that an analysis of privilege is unnecessary.[2] To clarify, Defendant argued as an initial matter in its Motion that the requested communications are "critical" in demonstrating "AXIS' primary defense in this case" that Plaintiff "failed to obtain from AXIS an identifiable agreement preserving a cause of action against AXIS for reimbursement of defense costs." (ECF No. 60-1 at 11). Plaintiff rebuts that these communications are irrelevant or otherwise immaterial primarily because (1) none of the affirmative defenses raised by AXIS depend on what Grenzer, Peter Walden (Plaintiff's representative), and Gollogly said to one another before or during the mediation; and (2) Plaintiff did, in fact, preserve its right to reimbursement through the Padmore Action settlement agreement entered into by the parties. (ECF No. 61 at 19–21).

The Court is not in the position to determine whether the Padmore Action settlement agreement nullifies Defendant's affirmative defense that Plaintiff failed to preserve or otherwise waived its right to seek recovery of defense costs from AXIS. (ECF No. 30 at 4–5). Such a conclusion is beyond the scope of the undersigned's referral. Additionally, the Court cannot accept Plaintiff's blanket assertion that internal communications between Plaintiff, its counsel in the

---

[2] Although this was the ultimate issue argued by Plaintiff in its Opposition, the Court finds that discussing the relevancy of the requested communications to Defendant's claims is an important threshold matter to address.

underlying action, and/or its coverage counsel could never be relevant to the issue of waiver.  "To determine whether a party has waived a contractual right, we look to the words and conduct of the party—not what effect the conduct may have had on the opposing party."  *Cain v. Midland Funding, LLC*, 452 Md. 141, 162 (2017); *see also KVC Waffles Ltd. v. New Carbon Co.*, No. 20-CV-195-LKG, 2022 WL 2919677, at *3 (D. Md. July 22, 2022).  Thus, the proper focus is on whether Plaintiff's words or conduct surrounding the settlement negotiations evidence their intentional relinquishment of their right to seek reimbursement.  Although what Plaintiff conveyed to Defendant would be one—and frankly the most—relevant inquiry, the Court could envision that even "internal" communications among Plaintiff and counsel could be relevant.

For example, a hypothetical pre-mediation internal communication arguing that insisting on reimbursement of defense costs or indemnity from a co-party might impede an otherwise desirable overall settlement of a high-exposure underlying case could be evidence that the issue of such reimbursement was not raised at the mediation. Similarly, a hypothetical post-mediation internal email raising reimbursement from a co-party for the first time would be evidence that such reimbursement was never raised with that co-party at the mediation.  An internal email expressing regret that a party "forgot" to raise the issue of reimbursement with a co-party at a prior mediation would similarly be relevant.  Even the absence of any internal discussion regarding coverage and the potential for reimbursement could support a defense of waiver.

Of course, other discovery in the case undercuts the factual support for the above hypotheticals given that: (1) Gollogly raised the issue of reimbursement/indemnity with Defendant by letter dated January 7, 2022, approximately one week before the mediation (ECF No. 61-7 at 1); (2) Grenzer's post-mediation but pre-settlement email to Atlas' counsel (which was then forwarded internally to Atlas' insurers) conditioned Gate Hudson's and Plaintiff's settlement

contribution on preserving the rights as between the parties' respective insurers (ECF No. 61-2 at 1; ECF No. 61-3 at 1); and (3) when the formal settlement draft was circulated, Gates Hudson and Plaintiff inserted language preserving those rights prior to the parties (including Defendant) signing the agreement (ECF No. 61-5 at 2).

That said, the parties, not the Court, are in the best position to determine how specific documents could be relevant in the factual context of the case, and the Court will not presume that its own short list of hypotheticals encompasses all the situations where a party's internal communications could be evidence of waiver or how counsel might choose to use such documents in support of such arguments.[3]  Said another way, even where such support may not be apparent, the Court cannot categorically rule out relevance given its imperfect knowledge of all the underlying facts of the case.  Accordingly, having found that such documents are potentially relevant, the Court will not deny Defendant's motion on the basis of relevance.

B. <u>Plaintiff Has Demonstrated that the Contested Communications are Protected Work Product</u>

The Court now turns to the more substantive issues raised by the parties having determined that the contested communications could be potentially relevant.  Because the common interest doctrine "presupposes the existence of an otherwise valid privilege," the Court begins by analyzing whether the contested discovery documents constitute protected work product.  *LaSalle*, 209 F.R.D. at 116; *see also Baxter Bailey & Assocs., Inc. v. Hovnanian Enterprises, Inc.*, No. CV JKB-16-1649, 2017 WL 4174965, at *2 (D. Md. May 8, 2017) ("To be protected under the common interest doctrine, communications 'must first satisfy the traditional requisites for the attorney-

---

[3] The Court's own *in camera* review did not provide obvious support for the above hypotheticals.  The Court, however, recognizes that even absent obvious support on the face of the communications, there could be relevance arguments depending on other facts in the case of which the Court is not fully aware.

client or work product privilege.'") (quoting *Glynn v. EDO Corp.*, No. JFM-07-1660, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010)).

"For a document to be created 'in anticipation of litigation' it must be prepared because of the prospect of litigation when the preparer faces an actual claim following an actual event or series of events that reasonably could result in litigation." *Hempel v. Cydan Dev., Inc.*, No. PX-18-3404, 2020 WL 4933634, at *2 (D. Md. Aug. 24, 2020) (quoting *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005), which quotes *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). The present lawsuit was filed in March 2022. Plaintiff's coverage counsel, Gollogly, wrote to AXIS on January 7, 2022, to inform AXIS that Plaintiff "will be looking to AXIS, Atlas' umbrella/excess carrier, and Atlas to assume primary responsibility for [Plaintiff's] insured, [Gates Hudson] in connection with any settlement offer" regarding the Padmore Action. (ECF No. 61-7 at 1). The letter further provides that Plaintiff "expect[s] AXIS to assume the primary indemnity obligation for Atlas at the January 13 mediation, to assume the defense of Gates Hudson and its employees, and to reimburse [Plaintiff] for all fees and costs it has incurred to defend Gates Hudson and its employees." *Id.* at 2. Thus, it seems clear that Plaintiff anticipated potential litigation against AXIS if AXIS failed to live up to Plaintiff's expectations as early as January 7, 2022, which pre-dates the contested email communications.

Additionally, according to Plaintiff, Gates Hudson also reasonably anticipated coverage litigation against AXIS on the issues raised in this action during the relevant period such that the communications are protected work product. (ECF No. 61 at 12–14). Plaintiff points out that Gates Hudson had its own potential coverage claim given that it contributed its own money towards the settlement (along with money from Plaintiff) and because its insurer (Plaintiff) brought

a suit disclaiming coverage on the same day as the mediation at a time when it still had unpaid fees.[4] The Declaration submitted by Gates Hudson's President in support of Plaintiff's opposition further supports this assertion. (ECF No. 61-6 at 2–3). Both of their subsequent actions in explicitly preserving such claims in the ultimate settlement agreement is the consummate evidence that such litigation was anticipated at the time the Padmore Action was being negotiated. Accordingly, the Court concludes that the contested documents constitute protected attorney work product.

Nevertheless, a party may still obtain protected work product upon demonstrating "both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 6363965, at *2 (D. Md. Oct. 29, 2020); *see also Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*, No. CV SAG-18-3298, 2020 WL 13240654, at *4 (D. Md. June 3, 2020); Fed. R. Civ. P. 26(b)(3)(ii). Defendant has not met this burden. Defendant's argument regarding substantial need argues primarily that it needs the communications because they "go to the very heart" of Plaintiff's claim for reimbursement and that the "communications are absolutely necessary for AXIS to establish that [Plaintiff] relinquished its rights during the settlement process." (ECF No. 63 at 11). But that assertion is undermined by the facts set forth by the Court above. Additionally, other sources are available beyond the protected material including, for example, the recollection of other mediation participants (including AXIS' own counsel), Plaintiff's communication with those participants, and other relevant documents Plaintiff avers that it has produced responsive to Defendant's discovery requests thus far. Accordingly, the Court cannot conclude that Defendant has demonstrated both a substantial need for the contested documents and/or that it is unable to

---

[4] That Plaintiff ultimately covered those fees is not relevant to whether litigation was reasonably anticipated during the window of time as to which Defendant seeks documents.

pursue its claims through alternate means without undue hardship without possessing the communications.[5]

### C. The Common Interest Doctrine Applies

Having found that the contested documents constitute protected attorney work product for which Defendant has not demonstrated a substantial need to obtain, the Court has no trouble concluding that the common interest document preserves that protection between Grenzer, Plaintiff, and Gollogly. "The common interest rule or doctrine protects communications between parties who share a common interest in litigation. The privilege allows 'persons with a common interest to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.'" *Mona v. McKay*, No. PJM 21-CV-1017, 2023 WL 6662369, at *3 (D. Md. Oct. 12, 2023) (quoting *In re Grand Jury Subpoena*, 415 F.3d at 341). The common interest doctrine applies not only to communications subject to the attorney-client privilege, "but also to communications protected by the work-product doctrine." *Id.* One method of demonstrating the common interest doctrine is by demonstrating "Common ownership or complete control, such as when wholly owned subsidiaries operate as a single entity." *In re Sanctuary Belize Litig.,* No. CV PJM 18-3309, 2019 WL 6717771, at *2 (D. Md. Dec. 10, 2019). But where "the proponent of the privilege does not claim that there is common ownership or complete control, he must demonstrate that the communicating parties shared an identical legal interest with respect to the subject matter of the communication." *Mona*, 2023 WL 6662369 at *3.

---

[5] Since the Court determines that Defendant has not demonstrated a substantial need for the contested documents in light of their status as protected work product, the Court similarly concludes that Defendant has not demonstrated that any attorney mental impressions contained within the contested documents—a separate and distinct form of protected work product—are discoverable under "rare and extraordinary circumstances." *Bryant*, 2020 WL 6363965 at *2.

As an initial matter, the Court observes that Gates Hudson and its liability insurer (i.e. Plaintiff) had a common interest in settling the Padmore Action with the lowest possible contribution. Thus, emails between Plaintiff and Gates Hudson leading up to the settlement conference and ultimate settlement such as many of those found in the Pre-Mediation Emails and the Post-Mediation/Pre-Settlement Emails come within that common interest of utilizing a negotiation strategy that maximized the contribution from AXIS and Zurich. An additional common interest dovetailed from that in both Plaintiff and Gates Hudson seeking to preserve post-settlement rights against Defendant to the extent Plaintiff's coverage counsel was looped into the above emails, and obviously in the Settlement Agreement Drafting emails which foreshadowed the current lawsuit.

While it is true that, for one purpose, Plaintiff's interests in disclaiming coverage under Gates Hudson's policy was adverse to Gates Hudson, Plaintiff's interests in seeking coverage reimbursement from Atlas and AXIS were aligned with Gates Hudson's for that identical purpose. Both Plaintiff and Gates Hudson had to deal with the contingency of not prevailing in the coverage litigation as between them. If Plaintiff prevailed, Gates Hudson would have every interest in pursuing coverage and reimbursement from Defendant. If Plaintiff did not prevail, Plaintiff would have every interest in pursuing coverage and reimbursement from Defendant. Moreover, Gates Hudson was already contributing its own money towards the settlement and had a separate interest in recouping that money from Atlas/AXIS. Put simply, Plaintiff has demonstrated that, despite Plaintiff being an adverse party to Gates Hudson in an independent underlying lawsuit, both Plaintiff and Gates Hudson—through the adjudication of that lawsuit—had the identical legal interest of ultimately forcing AXIS to pay the defense costs incurred in the Padmore Action and settlement. In other words, although Plaintiff and Gates Hudson were adverse as to who would

initially bear the costs of the Padmore Action before pursuing reimbursement from Defendant, both entities shared the same interest in obtaining reimbursement from Defendant. Accordingly, the Court concludes that the common interest doctrine applies.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 60) is **DENIED**.


Date: <u>December 11, 2023</u>                                        /s/
                                                                  J. Mark Coulson
                                                                  United States Magistrate Judge