**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TWIN CITY FIRE INSURANCE
COMPANY,

     Plaintiff,

                                Case No. 22-769

v.

AXIS INSURANCE COMPANY,

     Defendant.

_____/

## DEFENDANT, AXIS INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

    Defendant, AXIS Insurance Company ("AXIS") files this memorandum in support of its Motion for Partial Summary Judgment.

### I.     INTRODUCTION

    Plaintiff, Twin City Fire Insurance Company ("Hartford") filed this action seeking reimbursement of amounts paid to three separate law firms to defend Gates Hudson & Associates, Inc. ("Gates Hudson") and its two employees, with respect to the underlying lawsuit styled, *Wayne Padmore et al. v. Atlas West End Silver Hill, LLC et al.*, Case No. CL20-14812, in the Circuit Court for Prince George's County ("*Padmore* Lawsuit"). Unabashedly, Hartford does so despite the fact that it plainly waived and/or is estopped from asserting this claim against AXIS. Specifically, the *Padmore* Lawsuit settled, with AXIS paying its full policy limit, yet Hartford wholly failed to document any intention of seeking reimbursement of defense costs. Indeed, Hartford never even raised its purported claim until months after the settlement was documented by the court in the *Padmore* Lawsuit.

That said, and even assuming *arguendo*, that Hartford did not waive its rights, its claim is necessarily limited to defense costs incurred after January 7, 2022. Hartford admittedly did not tender Gates Hudson's defense in the *Padmore* Lawsuit to AXIS until January 7, 2022. True to course, Harford wants to be rewarded for its dereliction throughout the entire underlying lawsuit by relying on an earlier email that Gates Hudson sent to Atlas. Under well settled New York law, which applies to the AXIS Policy, this email is not a sufficient tender of coverage to AXIS. Rather, the email was a request for contractual indemnification from Gates Hudson to Atlas. Hartford did not send the email nor was it directed to AXIS. It, therefore, did not clearly and unequivocally place AXIS on notice of a request for insured status under the AXIS Policy as required by New York law. Therefore, Hartford cannot recover any defense costs incurred prior to January 7, 2022.

## II.     FACTS NOT SUBJECT TO GENUINE DISPUTE

### A.     The Property Management Agreement

Atlas is the owner of a residential apartment complex located on the corner of Silver Hill Road and Terrace Drive in Suitland, Maryland. *Exhibit 1, Complaint in Underlying Padmore Lawsuit,* ¶ 9. The apartment complex, known as Silver Hill apartment community ("the Property"), is comprised of several buildings, including 3529 and 3527 Terrace Drive. *Exhibit 1,* ¶ 9.

On March 1, 2016, Atlas entered into a Property Management Agreement (the "Agreement") with Gates Hudson, under which Gates Hudson assumed the duty to manage the Property. *Exhibit 1,* ¶ 16; *Exhibit 2, Property Management Agreement,* AXIS001514. The Agreement requires the parties to indemnify each other for injury claims pursuant to cross-indemnification provisions:

7.     INDEMNIFICATION

(a) <u>Indemnification By Owner</u>.  Owner agrees to indemnify and hold Manager and Manager's officers, directors, stockholders and employees harmless from and against any and all costs, expenses, reasonable attorneys' fees, suits, liabilities, damages, judgments, rulings, settlements, claims for any damages or governmental proceeding (civil or criminal) ("Indemnified Claim"), in any way relating to the Property, the management or leasing of the Property by Manager, or the performance or exercise by Manager, except for those matters arising out of the gross negligence or willful misconduct of Manager.

(b) <u>Appointment of Counsel</u>.  If an Indemnified Claim is brought or asserted against Manager, then Owner, upon notice from Manager, shall assume the investigation and defense thereof, including the employment and payment of Manager's attorneys and payment of all of Manager's reasonable expenses.  If a claim or action is brought against Manager but not Owner, or if Manager reasonably determines that it requires separate counsel to protect its interests because the interests of Owner and Manager conflict, Manager may select its own counsel to be paid by Owner, subject to the prior approval of Owner, which shall not be unreasonably withheld. In cases of gross negligence or willful misconduct of Manager, Manager will pay its own expenses and expenses of Owner.

(c) <u>Indemnification By Manager</u>.  Manager agrees to indemnify and hold Owner and Owner's officers, directors, stockholders and employees harmless from and against any Indemnified Claim in any way relating to the Property, the management or leasing of the Property by Manager, or the performance or exercise by Manager of the duties, obligations, powers or authorities herein or hereinafter granted to Manager, except for those matters arising out of the gross negligence or willful misconduct of Owner.

*Exhibit 2*, AXIS001518-001519.

## B.    The *Padmore* Lawsuit

On August 13, 2020, the *Padmore* Lawsuit was served on Gates Hudson.  *Exhibit 1, Complaint in Underlying Padmore Lawsuit*.  The *Padmore* Lawsuit sought damages due to carbon monoxide poisoning caused by the water heater at the Property. *Exhibit 1, ¶* 67-69.  Andre Ferrell was an employee of Gates Hudson who was the maintenance technician at the Property.  *Exhibit 1, ¶* 18.  Danielle Samuels was the Property manager employed by Gates Hudson.  *Exhibit 1, ¶* 20.  The plaintiffs, who were residents at the Property, alleged their injuries were caused by Atlas's, Gates Hudson's, Ms. Samuels', and Mr. Ferrell's failure to properly maintain the hot water heater. *Exhibit 1, ¶* 84-99.

3

**C.    The AXIS Policy**

AXIS issued a Commercial General Liability Policy to Atlas, policy number P-001-000012089-02, effective July 10, 2018 to July 10, 2019 with policy limits of $1 million per "occurrence" (the "AXIS Policy").  *Exhibit 3, AXIS Policy*, AXIS001595.  The AXIS Policy's Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability, requires AXIS to pay damages because of "bodily injury" caused by an "occurrence", defined as an "accident", that occurs during the policy period.  *Exhibit 3,* AXIS001598; AXIS001612.  The AXIS Policy provides a duty to defend Atlas in any "suit" alleging such damages.  *Exhibit 3,* AXIS001598.

The duties to defend and to pay damages under the AXIS Policy are limited by the following exhaustion language:

> …. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
>
> (1) The amount we will pay for damages is limited in Section **III** – Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B.**  *Exhibit 3,* AXIS001598.

**D.    The Hartford Policy**

Hartford issued a Special Multi-Flex Policy to Gates Hudson, policy number 20 UUN IB5054 Policy Term, effective January 1, 2019 to January 1, 2020 (the "Hartford Policy"), with limits of $1 million per "occurrence".  *Exhibit 4, Hartford Policy*.  The Hartford Policy's Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability, requires Hartford to pay damages because of "bodily injury" caused by an "occurrence", defined as an "accident", that

4

occurs during the policy period. *Exhibit 4.* The Hartford Policy provides a duty to defend in any "suit" alleging such damages. *Exhibit 4.*

The Hartford Policy also contains an "Absolute Pollution Exclusion", which excludes coverage for "bodily injury" that is "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants": (a) At or from any premises…." *Exhibit 8,* ¶ 16.

**E.    Gates Hudson's tender for contractual indemnity to Atlas**

Gates Hudson communicated with Atlas about the *Padmore* Lawsuit and requested defense and indemnification by Atlas and its carrier based on Atlas' contractual defense and indemnity obligations under the Agreement. By email dated August 14, 2020, Danielle Serrano, on behalf of Gates Hudson, sent an email to Atlas' representative, Lloyd Grosklags, providing the complaint filed in the *Padmore* Lawsuit, requesting that Atlas forward the complaint to Atlas' insurer, and seeking confirmation that defense counsel would be assigned to defend Gates Hudson and the employees. *Exhibit 5, January 7, 2022 Tender Letter from Hartford to AXIS*, AXIS000258.

By email dated August 30, 2020, Atlas advised Gates Hudson that Atlas' insurer would not "be representing Gates Hudson or the two site employees but rather will be representing [Atlas]." *Exhibit 5,* AXIS000257.

By email dated August 31, 2020, Gates Hudson replied to Atlas that "the property indemnifies Gates Hudson, so the carrier should represent both the property and Gates Hudson. The insurance carrier will request a copy of our management agreement to confirm, which I have attached". *Exhibit 5,* AXIS000256- AXIS000257.

By email dated September 3, 2020, Gates Hudson asked Atlas to "confirm that the carrier is indemnifying and defending Gates Hudson". *Exhibit 5,* AXIS000255.

5

By email dated September 3, 2020, Gates Hudson provided a copy of the Agreement to Atlas' broker, claiming that Gates Hudson was entitled to a defense pursuant to the Agreement:

> We are the managing agent.  Attached is the Property Management Agreement, which states that we are indemnified.  *Exhibit 5,* AXIS000253.

Atlas' broker forwarded the above emails to AXIS and inquired whether AXIS would provide a defense to Gates Hudson and its employees under the Agreement.  *Exhibit 5,* AXIS0000248-000253.  By email dated September 9, 2020, AXIS replied that "there is a provision in the Agreement requiring the Manager to indemnify and afford additional insurance status to the Owner" and "we do need to have Gates Hudson & Associates' carrier involved in review of the complaint".  *Exhibit 5,* AXIS0000248.

Notably however, none of these emails involving AXIS were prepared by Hartford. Hartford was not copied on the emails, and none of the communications were a tender for coverage under the AXIS Policy.  It is clear from these emails that Gates Hudson was not seeking a defense as an insured under the AXIS Policy, but as an indemnitee under the Agreement.

**F.**    **Hartford's tender to AXIS**

Over 15 months later, the parties in the *Padmore* Lawsuit attended a mediation on January 13, 2022.  *Exhibit 5*, AXIS000246.  Shortly before the mediation, Hartford retained Ezra Gollogly as its coverage counsel.  *Exhibit 5,* AXIS000246-AXIS000247.  By letter dated January 7, 2022, six days prior to a mediation, Hartford, through its counsel, Mr. Gollogly, demanded for the first time that AXIS reimburse Hartford for attorney's fees and costs paid to defend Gates Hudson and its employees in the *Padmore* Lawsuit as an insureds under the AXIS Policy. *Exhibit 5,* AXIS000246-AXIS000247.  Specifically, Hartford's counsel's letter states: "We expect AXIS to assume the primary indemnity obligation for Atlas at the January 13 mediation, to assume the

defense of Gates Hudson and its employees, and to reimburse Hartford for all fees and costs it has incurred to defend Gates Hudson and its employees." *Exhibit 5,* AXIS000247.

By letter dated January 12, 2022, AXIS responded to Mr. Gollogly's tender.  AXIS requested that Hartford defend and indemnify Atlas pursuant to the cross indemnification provisions of the Agreement.  *Exhibit 6*, *January 12, 2022 Response to Tender from AXIS to Hartford*, AXIS002658-AXIS002659.

Mr. Gollogly was aware before the mediation on January 13, 2022 that AXIS was represented by coverage counsel, Kristin Gallagher. *Exhibit 7, January – March 2022 Emails*, AXIS000007-AXIS0000008.  Mr. Gollogly exchanged communications with Ms. Gallagher on January 12, 2022, the day before the mediation concerning Hartford's disclaimer of coverage to Gates Hudson based on the Absolute Pollution Exclusion in the Hartford Policy.  *Exhibit 7,* AXIS000007-AXIS0000008.

The morning of the mediation, Hartford, through Mr. Gollogly, filed a lawsuit against Gates Hudson alleging that the Hartford had no duty to defend or indemnify Gates Hudson for the relief sought in the *Padmore* Lawsuit based on the Absolute Pollution Exclusion of the Hartford Policy.  *Exhibit 8,* Complaint in Hartford's Coverage Action vs. Gates Hudson.

**G.**     **Negotiation and Settlement of the *Padmore* Lawsuit**

At the mediation on January 13, 2022, at approximately mid-day, AXIS' representative, Martee Stokes, tendered the $1 million primary limits of the AXIS Policy to Zurich, an excess liability insurer for Atlas, to use to settle plaintiffs' claims against Atlas.  *Exhibit 9, Response to Interrogatory No. 5.* After AXIS tendered its limits to Zurich for what AXIS properly assumed would be in exchange for a full release of AXIS, Ms. Stokes was no longer negotiating settlement. *Exhibit 9, Response to Interrogatory No. 5.*

By email dated February 9, 2022, the trial court advised that the parties had settled the *Padmore* Lawsuit. *Exhibit 9, Response to Interrogatory No. 5.* There was no term sheet prepared by the parties at the mediation or any time thereafter indicating that the settlement preserved Hartford's claim for reimbursement of defense costs incurred for Gates Hudson and its employees. *Exhibit 9, Response to Interrogatory No. 5.* Initial drafts of the formal settlement agreement did not contain the reservation of rights either. *Exhibit 9, Response to Interrogatory No. 5.*

However, it was not until by email dated March 3, 2022, that Mr. Gollogly contacted Ms. Gallagher for the first time to raise Hartford's reimbursement claim for defense costs. *Exhibit 7, January – March 2022 Emails*, AXIS000007-AXIS000008.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Neal v. United States*, 599 F. Supp.3d 270, 286 (D. Md. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

Once the movant meets the initial burden of presenting evidence showing no genuine issue of material fact, the burden shifts to the opposing party. *Warfaa v. Ali*, 1 F.4th 289, 293 (4th Cir. 2021). The opposing party must then "present specific facts showing that there is a genuine issue for trial." *Id.* Rule 56 permits litigants to move for partial summary judgment, and for the Court to resolve certain issues at summary judgment. Fed. R. Civ. P.56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *Nguit v. Safeco Ins. Co.*, 2017 WL 2778821, at *2 (D. Md. June 27, 2017) ("A motion for partial summary judgment is recognized as a useful pretrial

tool…[and] serves the purpose of speeding up litigation by narrowing the issues for trial to those over which there is a genuine dispute of material fact.").

AXIS is entitled to partial summary judgment as a matter of law because, based on the undisputed facts, Hartford is not entitled to reimbursement of defense costs paid to defend Hartford's insureds in the *Padmore* Lawsuit prior to Hartford's tender to AXIS on January 7, 2022.

## IV.    <u>ARGUMENT</u>

It is undisputed that Hartford defended Gates Hudson and its two employees without communicating any request for insured status under the AXIS Policy until January 7, 2022, over 15 months after the *Padmore* Lawsuit was filed.  As discussed below, under well settled New York law, an insurer is not entitled to recover pre-tender defense costs.  Gates Hudson's emails to Atlas in 2020 do not constitute a sufficient tender of Gates Hudson's defense to AXIS.  It is undisputed that there was never an actual tender communicated by Gates Hudson to AXIS requesting coverage as an additional insured as required by New York law.  Hartford's attempt to piggyback onto the tender from Gates Hudson to Atlas fails.  At bottom, to the extent that Hartford is entitled to recover any damages in this case, such damages are limited to defense costs incurred by Hartford in the *Padmore* Lawsuit after January 7, 2022, the date Hartford first tendered its claim for reimbursement to AXIS.

**A.    The AXIS Policy is governed by New York law.**

In this diversity action, the Court must apply Maryland choice-of-law rules to decide which state's law shall determine the parties' rights and duties under the AXIS Policy.  *Markel Ins. Co. v. Sumpter*, No. GJH-21-2239, 2022 WL 2703832, at *6 n. 11.  (D. Md. July 11, 2022).  Maryland's choice-of-law rule for the instant action is *lex loci contractus*.  *W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*, 814 F.3d 171, 176 (4th Cir. 2016) ("The locus contractu of an insurance policy is

the state in which the policy is delivered and the premiums are paid.") (citation omitted); *Nationwide Mut. Ins. Co. v. Wendler*, 796 F. Supp. 201, 202 (D. Md. 1992) (where policy was issued and delivered in Maryland and premiums paid in Maryland, Maryland law governed "questions relating to the validity, effect and interpretation of [the] contract.").

The entire premise for Hartford's purported claim for reimbursement of defense costs is that Gates Hudson and its employees are entitled to insured status under the AXIS Policy.  The AXIS Policy was delivered to Atlas in New York, New York.  *Exhibit 3, AXIS Policy*, AXIS001595.   Accordingly, the Court must apply New York law to this claim.

**B.** **Hartford is not entitled to reimbursement prior to its tender on January 7, 2022 as a matter of law.**

Under New York law, an insurer cannot recover pre-tender defense costs from another insurer.  *See Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 27 A.D. 3d 84, 94 (1st Dep't 2005) (only requiring reimbursement for defense costs incurred after the underlying lawsuit was tendered); *JT Magen v. Hartford Fire Ins. Co.*, 64 A.D.3d 266, 879 N.Y.S.2d 100 (2009) (notice of claim was satisfied when insurer received indemnification request from another carrier on behalf of mutual insured); *Liberty Ins. Underwriters v. Arch Ins. Co.*, 61 A.D.3d 482, 483 (1st Dep't 2009) ("Defendants…are not entitled to reimbursement of defense costs incurred before tendering the defense to plaintiff…"); *Allstate Ins. Co. v. Hartford Ins. Co. of the Midwest*, No. 17-CV-7553 (SHS), 2019 WL 30066491, at *6 (S.D.N.Y. July 12, 2019) (same).

In *Allstate*, just like in this case, Allstate sought reimbursement for defense costs from, ironically, Hartford, for defense of a mutual insured.  After the court determined that the Hartford policy was co-primary and, therefore, responsible for a pro-rata portion of the insured's defense costs, the court calculated the date from which Allstate was entitled to reimbursement for that portion of defense costs from Hartford.  The court held that: "Because Allstate acquiesced—

without any reservation—in fully funding [the insured's] defense for most of the underlying litigation, Allstate may only recover for legal expenses incurred after it first reserved its right to contribution in its letter of August 12, 2016." *Id.*

The court distinguished the case that Allstate cited, *Sport Rock International, Inc. v. American Casualty Co. of Reading*, 65 A.D.3d 12 (1st Dep't 2009), because the insurer in that case rejected the initial tender by the other insurer. *Id.* In *Allstate*, however, there was no initial tender rejected by Hartford. Rather, Allstate defended the insured without communicating any reservation of rights to seek contribution from Hartford, until its August 12, 2016 letter.

The exact same set of circumstances occurred here. It is beyond dispute that Hartford did not actually tender the defense of Gates Hudson or its employees to AXIS, or communicate any reservation of rights to recover defense costs from AXIS, until the January 7, 2022 letter. *Exhibit 5, January 7, 2022 Tender Letter from Hartford to AXIS*, AXIS000246-AXIS000247. Therefore, Hartford's recovery from AXIS, if any, is limited to defense costs incurred after January 7, 2022.

**C.      The emails from Gates Hudson to Atlas does not support Hartford's claim for reimbursement.**

Hartford neglected to send a tender of Gates Hudson's defense to AXIS at any time prior to January 7, 2022, over 15 months after the *Padmore* Lawsuit was filed on August 13, 2020. Hartford instead relies on communications by Gates Hudson to Atlas tendering Gates Hudson's defense in the *Padmore* Lawsuit based strictly on the indemnification provisions in the Agreement.

The August-September 2020 emails relied upon by Hartford do not constitute a tender of defense to AXIS. *Exhibit 5,* AXIS000248-AXIS000258. Under New York law, a tender for insured status requires notice ***to the insurer*** that the purported insured is seeking coverage under the policy. *See Liberty Ins. Underwriters, Inc. v. Great American Ins. Co.*, No. 09-CV-4912, 2010 WL 369470 *8 (S.D.N.Y. Sept. 17, 2010) (finding that letter from additional insured did not

11

constitute proper notice of underlying claim or request for additional insured coverage because the letter only included the third-party complaint and nothing else in the letter indicated that the purported additional insured was seeking coverage under the Great American policy); *Travelers Prop. Cas. Co. of America v. Hudson Excess Ins. Co.*, No. 1:21-CV-6671, 2023 WL 2402962 (S.D.N.Y. Mar. 8, 2023) (insurer was not entitled to recover defense costs from date of initial letter, because that letter did not provide facts establishing coverage for the purported additional insured under the policy).

In *Liberty Ins. Underwriters, Inc. v. Great American Ins. Co.*, *supra.*, Liberty and its insured (Arrow) sought a declaration that Great American had a duty to defend Arrow in the underlying lawsuit and reimburse its costs. Great American insured a subcontractor (Diamond) that was performing work for Arrow whose employee was injured during course of his work. Arrow and Liberty claimed that Great American had the primary duty to defend Arrow in the underlying lawsuit as Arrow was an additional insured under the Great American Policy. The injured employee sued Arrow on January 8, 2007 and Arrow filed a third-party complaint against Great American's insured, Diamond, on October 4, 2007. On January 2, 2008, Arrow's counsel sent Diamond a letter including the third-party complaint and a copy of the certificate of insurance and requested the letter be forwarded to the applicable insurer. Great American denied coverage to Arrow based on Arrow's failure to provide timely notice of an occurrence or claim. Arrow argued that it provided proper notice through the January 2, 2008 letter, which was forwarded to Great American.

The court held that Arrow's notice was not timely or proper under New York Law. First, the court noted that under New York law an additional insured is required to provide notice independent of whether the named insured had provided notice. 2010 WL 369470 at *6. The

court then held that the January 2, 2008 letter did not constitute proper notice of the underlying claim or a request for additional insured coverage because the letter included only the third-party complaint, and nothing else in the letter indicated that Arrow was seeking coverage under the Great American Policy. *Id.* at *8.

Accordingly, under *Liberty*, a purported insured is required to inform the insurance carrier that it is seeking coverage under that policy, explain why, and provide the necessary information in support. Here, none of that happened. Gates Hudson never explained that it was seeking coverage under the AXIS Policy or why it was seeking such coverage, and never provided the necessary information in support of its claim for coverage under the AXIS Policy. Rather, it simply informed Atlas that it was seeking contractual indemnity under the lease agreement. Moreover, the fact that AXIS ultimately received the email, like the insurer in *Liberty*, is irrelevant.

Here, the emails between Gates Hudson and Atlas concern Atlas' contractual obligations to Gates Hudson under the parties' Property Management Agreement. There was never any actual tender communicated by Gates Hudson to AXIS requesting coverage as an insured as required by New York law. Indeed, in its August 31, 2020 email to Atlas, Gates Hudson states "it is my understanding that [Atlas] indemnifies Gates Hudson, so the carrier should represent both [Atlas] and Gates Hudson. The insurance carrier will request a copy of our management agreement to confirm, which I have attached." *Exhibit 5,* AXIS000257.

This is not a proper tender under New York law because it is not a request for insured coverage under Atlas' insurance policy(ies). To the extent that AXIS was provided notice of these emails between Gates Hudson and Atlas, AXIS only had notice of a potential third-party claim for contractual indemnity by Gates Hudson against Atlas. At bottom, the 2020 emails do not establish

any duty on AXIS to defend Gates Hudson as an additional insured under the AXIS Policy, and therefore they do not constitute sufficient tender under New York law.

**D.      Hartford's reliance on Gates Hudson's email is even further misplaced because Hartford is the real party in interest.**

Gates Hudson did not sustain any damage or pay any out-of-pocket costs and, therefore does not have a valid reimbursement claim against AXIS. *See Oville v. Newski, Inc.*, 547 N.Y.S.2d 913, 914 (3d Dep't 1989) (party cannot succeed on claim for breach of contract where they have not sustained any damages).  Moreover, any rights that Gates Hudson may have possessed to recover defense costs from Atlas or AXIS were extinguished by Hartford's settlement of the *Padmore* Lawsuit.  Thus, any claim that could have been pursued by Gates Hudson against AXIS is now moot, as Gates Hudson has no actionable claim against AXIS.

Hartford is obviously the party seeking reimbursement here.  It simply cannot stand in Gates Hudson's shoes to pursue a claim that Gates Hudson does not have the right to pursue in the first instance.  Under New York law, subrogation in the insurance context is the principle by which an insurer, having paid losses of its insured, is placed in the position of the insured so that it may recover from a third party legally responsible for its loss.  *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 581 (1995).  However, subrogation does not apply when an insurer seeks reimbursement of defense costs from another insurer because such claims do not involve an insurer seeking reimbursement from a third-party wrongdoer. *See Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000); *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53, 61 (2005) (insured could not recover all its defense costs from the other insurer, but rather the defense costs from when the *insurer* tendered the matter).

Hartford cannot step in the shoes of its insured, Gates, and seek reimbursement of defense costs based on communications between Gates and Atlas, because Hartford's claim for

14

reimbursement of defense costs is against AXIS, which is not a third-party wrongdoer.  Hartford's

attempt to piggyback on a tender by Gates Hudson to Atlas must, therefore, fail.

## CONCLUSION

For the foregoing reasons, the Court should enter partial summary judgment declaring that

to the extent that if Hartford is entitled to recover any damages from AXIS in this case, those

damages are limited to defense costs incurred after January 7, 2022.


Respectfully submitted,


/s/ Kristin V. Gallagher

Kristin V. Gallagher (*pro hac vice – lead counsel*)
Josh Levy (*pro hac vice)*
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
T 908 848 6300
F 908 647 8390
Email: kristin.gallagher@kennedyslaw.com
diane.frank@kennedyslaw.com

Email: josh.levy@kennedyslaw.com
Andrew Janquitto
Mudd, Harrison & Burch, LLP
222 Bosley Avenue, Suite A-1
Towson, Maryland 21204
T 410 828 1335
F 410 828 1042
Email: aj@mhblaw.com


*Counsel for Defendant,*
*AXIS Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2024, I e-filed and therefore e-served a copy

of this Motion on the following:

Ezra S. Gollogly, Esquire
Steven M. Klepper, Esquire
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202

*/s/ Kristin V. Gallagher*

Kristin V. Gallagher

16