# EXHIBIT 2

# PROPERTY MANAGEMENT AGREEMENT

This Property Management Agreement ("Agreement") is made as of March 1, 2016, by and between Atlas West End Silver Hill LLC, a Delaware corporation, with its principal place of business at 2200 Pennsylvania Avenue, NW, Fl 4, Washington DC 20037 (the "Owner"), and Gates, Hudson & Associates, Inc. a Virginia corporation, with its principal place of business at 3020 Hamaker Court, Suite 301, Fairfax, Virginia 22031 (the "Manager") (collectively, the "Parties").

## RECITALS:

WHEREAS, Owner owns The Residences at Silver Hill (the "Property");

WHEREAS, Owner wishes to retain Manager as its exclusive Manager to lease and manage the Property on behalf of the Owner, and Manager is willing to lease and manage the Property on the terms set forth in this Agreement.

## AGREEMENTS:

NOW, THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **APPOINTMENT OF MANAGER.** Owner appoints Manager to act as its exclusive leasing representative and manager for the Property on the terms set forth in this Agreement, and Manager accepts such appointment.

2. **TERM.** The term (the "Term") of this Agreement will commence on the date hereof for a period of one year, and for successive periods equal in length to the initial term unless at least thirty (30) days prior to the expiration date of the initial or a subsequent term, one party gives the other party hereto written notice of its intent not to renew this Agreement in which case this Agreement shall terminate at the end of the applicable term.

3. **MANAGER'S DUTIES**. Manager shall perform its duties hereunder in a professional and efficient manner as contemplated by the terms of this Agreement and at the compensation provided herein. Manager agrees to manage the Property in a manner consistent with best in class services for properties of similar class.

Without limiting the generality of the foregoing, Manager shall have the following specific duties:

(a) <u>Investigation of Tenants</u>. Manager shall take reasonable steps to investigate references for all prospective tenants and to determine whether they have the financial

1

ability to pay rent and other monies due Owner. Manager will utilize a third party provider of criminal and financial background investigations.

(b) <u>Negotiation and Execution of Leases</u>. Manager shall negotiate new leases and renewals of existing leases in accordance with a leasing plan previously approved by Owner. Manager shall be authorized to execute residential leases on Owner's behalf.

(c) <u>Rents</u>. Manager shall collect and enforce the payment of all rents and other monies due to Owner by tenants.

(d) <u>Security Deposits</u>. Manager shall maintain all tenant security deposits as required by law or the governing lease, and remit to Owner any interest earned on such accounts that is not required to be paid to tenants.

(e) <u>Legal Actions</u>. Manager is authorized to institute and prosecute actions to evict tenants in default of their lease obligations and to recover rent and others sums due and owing from tenants. Manager shall not settle, compromise or release any claim or action if the amount at stake exceeds One Thousand Dollars ($1,000.00) without the prior written approval of Owner. All legal fees and expenses related to such legal proceedings are expenses to be paid by Owner and shall be deducted from rental and other income received from the Property.

(f) <u>Debt Service, Taxes and Expenses.</u> To the extent that funds are made available to it by Owner, Manager shall, on behalf of Owner, pay all loans and mortgages on the Property prior to due dates, all real and personal taxes, all license fees and payroll taxes, all utility and customary costs of operation, all salaries of employees, purchase and pay for supplies and equipment, and maintain payroll records and make all tax returns required by law, and pay any other costs necessary in connection with the operation of the Property. To the extent that funds for the foregoing expenses are not immediately available from rents, Owner will provide the balance that Owner deems as reasonable within five (5) days of receipt of a written request for payment from Manager. If Owner fails to provide sufficient funds to pay the balance within the aforesaid period, Owner shall be in material breach of this Agreement. Manager shall be under no obligation to fund such expenses if there is a negative cash balance.

(g) <u>Owner Approval of Certain Expenditures</u>. Manager shall submit for prior approval by Owner any unbudgeted single expenditure exceeding One Thousand Dollars ($1,000), including total or aggregate payments under contracts, except monthly or recurring operations charges or emergency repairs if, in the opinion of Manager, such repairs are necessary for the preservation or safety of the Property, the safety of occupants, to avoid the suspension of any necessary service to the Property, to maintain services to tenants as required by their leases, or to comply with federal, state or local government regulations or directive. Manager, in these instances, will report the emergency to Owner the next business day.

AXIS001515

(h) <u>Annual Budget</u>. Manager shall provide a proposed annual operating and capital budget setting forth the estimated receipts and estimated amounts to be expended during the next succeeding calendar year for Owner's approval. The proposed annual budget shall be provided to Owner on or before December 1.

(i) <u>Monthly Reports and Payments to Owner</u>. Manager shall provide monthly financial reports to Owner of all rental and other income received and all deductions and disbursements relating to the Property. The foregoing monthly statements shall be sent to Owner on or before the 10th day of the following month, together with the net income, if any, remaining after payment of expenses. Manager may retain in its account such operating reserve as Owner may deem necessary for the purpose of providing sufficient funds to make all payments to operate the Property. Manager may also deduct its management fees as set forth in Paragraph 5 below. Owner agrees promptly to reimburse Manager for any negative cash balance at the end of each month. If reimbursement for any negative cash balance is not received by Manager within five (5) days of receipt of a monthly report showing a negative cash balance, Owner shall be in material breach of this Agreement.

(j) <u>Repairs and Maintenance</u>. Manager shall, out of funds made available to it by Owner, make or cause to be made all necessary repairs, alterations, decorations and replacements to the Property that Owner is obligated to make under lease agreements with tenants or which are required to maintain the Propertiy to standards approved by Owner. Owner is responsible to pay all of the foregoing expenses. With Owner's consent, Manager may use its own carpenters, mechanics, laborers or other personnel on the payroll of Manager to perform work on the Property, in which case Manager shall be entitled to charge Owner the cost thereof, including payroll taxes and insurance, plus fifteen percent (15%) of such cost to cover administrative overhead and supervision, down-time and use of tools, supplies and vehicles.

(k) <u>Service Contracts</u>. Manager shall enter into contracts in the Owner's name for electricity, gas, water, sewer, exterminator, telephone, security, rubbish hauling, concessions, vending and other utilities and services as Manager deems consistent with the normal and customary maintenance of similar premises. Owner is responsible for the legal obligations created by the foregoing service contracts. All contracts must contain a 30 day cancellation clause; such clause will not contain a penalty and no contract can be for greater than one year.

(l) <u>Books and Records</u>. Manager shall maintain books of accounts of all receipts and disbursements incurred in the management and operation of the Property, which shall be open for Owner's inspection at all reasonable times. Manager will cooperate with and give reasonable assistance to any accountant or other person designated by Owner to examine such books and records. Books and records will be kept in accordance with GAAP.

AXIS001516

(m) Equipment. Manager shall, out of the funds made available to it by Owner, place purchase orders for such equipment, tools, appliances, and supplies necessary to properly maintain and operate the Property.

(n) Personnel. Manager shall employ such personnel as are necessary for Manager to perform its obligations hereunder. All such personnel are the employees of Manager. Manager shall pay and Owner shall reimburse Manager for the cost of all applicable wages or other compensation (including social security taxes, workman's compensation, fringe benefits and unemployment insurance) of such personnel. If an employee of Manager also provides services for a property not owned by Owner, a reasonable portion of the employee's compensation shall be allocated to the Owner's Property for which the employee is providing services.

(o) Advertising. Manager may use its name and logo in any and all advertising relating to the Property including, but not limited to, display and management signs erected on or adjacent to the Property, subject to approval by Owner, which shall not be unreasonably withheld. All advertising expenses incurred by Manager that relate to the Property shall be reimbursed by Owner.

(p) Insurance Payments. Manager shall, out of funds made available to it by Owner, keep in force all insurances on the Property (and as set forth in Paragraph 8 below) and pay all insurance premiums from income generated by the Property.

(q) Bank Accounts. Manager shall establish a separate bank account for the Property, and shall deposit all rents and other proceeds collected from the operation of the Property in its bank account. Manager shall pay all expenses relating to the Property and its management fees out of the bank account established for the Property.

4. **SUFFICIENT FUNDS.** If bank account does not have sufficient funds to pay approved operating expenses, Manager will request funds from Owner.

5. **COMPENSATION.**

(a) Management Fee. Owner shall pay Manager a fee for management services provided by Manager under this Agreement based on three percent (3%) of Gross Revenue (as defined below) for the Property or $4,000 per month, whichever is greater. Manager may deduct such management fee from Owner's funds deposited in the bank account referred to in Paragraph 3(q) above each month.

(b) Construction Supervision Fee. If Owner decides to make alterations or improvements to the Property, Manager shall administer and coordinate the construction and Owner shall pay Manager a construction supervision fee to be determined pursuant to a separately negotiated agreement.

(c) Definitions of "Gross Revenue." "Gross Revenue" is defined for the Property as all amounts received from the operation of the Property including, but not limited to,

4

rent, additional rent, parking fees, late fees, vending income, utility income, ancillary services provided to tenants, other revenues that are collected on a monthly basis, any other fees or charges paid by tenants, payments made in consideration of the cancellation, surrender or modification of any lease, without limitation, and the proceeds from any rental interruption insurance. Security deposits shall not be included in Gross Revenue unless and until such deposits are applied as rent. Interest on escrow deposits shall also not be included in Gross Revenue.

6. **OWNER'S DUTIES**. Owner shall provide Manager with such information and cooperation as is reasonably necessary for Manager effectively to perform its duties hereunder, which shall include, but not be limited to the following: (i) furnish Manager with all documents, records, data and other information required to manage and operate the Property; (ii) provide reasonably timely decisions, information and consultations concerning all matters relating to the Property; (iii) cooperate with Manager to facilitate the performance of Manager's duties; (iv) provide Manager with additional funds that may be necessary to pay all expenses incurred with respect to the Property and pay Manager's management fees, expenses, and other reimbursable costs, to the extent that the Property does not yield sufficient funds for such purposes; and (v) direct all leasing or renewal inquiries to Manager who shall have exclusive responsibility for conducting all lease negotiations on behalf of Owner.

7. **INDEMNIFICATION.**

(a) <u>Indemnification By Owner</u>. Owner agrees to indemnify and hold Manager and Manager's officers, directors, stockholders and employees harmless from and against any and all costs, expenses, reasonable attorneys' fees, suits, liabilities, damages, judgments, rulings, settlements, claims for damages or governmental proceeding (civil or criminal) ("Indemnified Claim"), in any way relating to the Property, the management or leasing of the Property by Manager, or the performance or exercise by Manager of the duties, obligations, powers or authorities herein or hereinafter granted to Manager, except for those matters arising out of the gross negligence or willful misconduct of Manager.

(b) <u>Appointment of Counsel</u>. If an Indemnified Claim is brought or asserted against Manager, then Owner, upon notice from Manager, shall assume the investigation and defense thereof, including the employment and payment of Manager's attorneys and payment of all of Manager's reasonable expenses. If a claim or action is brought against Manager but not Owner, or if Manager reasonably determines that it requires separate counsel to protect its interests because the interests of Owner and Manager conflict, Manager may select its own counsel to be paid by Owner, subject to the prior approval of Owner, which shall not be unreasonably withheld. In cases of gross negligence or willful misconduct of Manager, Manager will pay its own expenses and those of Owner.

(c) <u>Indemnification By Manager</u>. Manager agrees to indemnify and hold Owner and Owner's officers, directors, stockholders and employees harmless from and against any Indemnified Claim in any way relating to the Property, the management or leasing of the Property by Manager, or the performance or exercise by Manager of the duties,

5

obligations, powers or authorities herein or hereinafter granted to Manager, except for those matters arising out of the gross negligence or willful misconduct of Owner.

(d) <u>Survival of Indemnity</u>.  The indemnification provided for herein shall survive the termination of this Agreement.  Sections 7(a) , (b) and (c) shall survive the termination of this Agreement.

8.    **INSURANCE**.

(a) <u>Owner's Insurance</u>.  Owner will obtain and maintain in full force and effect throughout the Term of this Agreement and any extension thereto, the following insurance coverages: (i)  a commercial general liability insurance policy protecting Owner and, by listing Manager as additional insured, Manager against liability relating to the Property with a minimum single limit of One Million Dollars ($1,000,000.00) per occurrence and an aggregate of at least Two Million Dollars ($2,000,000.00) covering bodily injury, property damage and personal injury; (ii) an umbrella liability insurance policy with a minimum limit of Ten Million Dollars ($10,000,000.00) per occurrence and in the aggregate; (iii) a special causes of loss property insurance policy and a builder's risk insurance policy (if Owner intends to do construction or renovation at the Property) in an amount sufficient to cover the full cost of replacing the Property and any personal property thereon.  The special causes of loss and builder's risk policies shall provide coverage for loss of income in an amount that is sufficient to cover loss of rental income for an annual period as a result of the peril insured.

(b) <u>Manager's Insurance</u>. Manager will obtain and maintain in full force and effect throughout the Term of this Agreement and any extension thereto, the following insurance coverages: (i) a commercial general liability insurance policy protecting Manager against liability relating to the Property with a minimum single limit of One Million Dollars ($1,000,000.00) per occurrence, with an aggregate of Two Million Dollars ($2,000,000.00) covering bodily injury, property damage and personal injury; (ii) an umbrella liability insurance policy in excess of underlying general liability, employers' liability and automobile liability policies with a minimum limit of Thirteen Million Dollars ($13,000,000.00) per occurrence and in the aggregate; (iii) automobile insurance with a minimum limit of One Million Dollars ($1,000,000.00) per occurrence covering any auto/accident; (iv) crime policy with a minium limit of Two Million Dollars ($2,000,000.00) per occurrence and in the aggretate; (v) Worker's Compensation  and Employers'  Liability with minium limits of $1,000,000 bodily injury each accident/$1,000,000 bodily injury by disease policy/$1,000,000 bodily injury by disease each employee; (vi) Employment Practices Liability policy including Third Party; and (vii) an errors and omissions policy with a minimum limit of Two Million Dollars ($2,000,000.00) per occurrence and in the aggregate.

AXIS001519

(c) <u>General Conditions</u>. Manager's liability policies required hereunder shall list Owner as an additional insured. All of Owner's insurance policies required hereunder shall name Manager as an additional insured and provide for forty five (45) days' prior written notice to Manager of cancellation or non-renewal. Owner's property and liability policies are primary and non-contributory.

(d) <u>Subrogation Rights.</u> Owner reserves the right against Manager to recover any losses as a result of Manager's gross negligence or willful misconduct. Manager reserves the right to recover from Owner any losses that result from Owner's failure to provide Manager with approval and/or funding to maintain the property as Manager recommends. All losses will be covered by Owner's or Manager's insurance policies as determined.

9. **TERMINATION**.

(a) <u>Breach by Manager</u>. Owner may terminate this Agreement for any reason upon thirty (30) days' notice to Manager.

(b) <u>Breach by Owner</u>. Manager may terminate this Agreement if, sixty (60) days after giving notice to Owner (i) Manager has not been paid the fees that are due and owing to Manager; (ii) Owner fails to comply with the funding of expense requirements of Paragraph 4 above (Sufficient Funds); (iii) Owner fails or refuses to comply with any rule, order, determination, ordinance or law of any federal, state, or municipal authority; (iv) Owner fails to obtain and maintain the insurance requirements of Paragraph 8 above; or (v) Owner is in material breach of this Agreement.

(c) <u>Termination Without Cause</u>.  Owner may terminate this Agreement prior to the expiration of the initial term or any subsequent term by giving at least thirty (30) days' written notice to the other party .

(d) <u>Termination on Sale</u>. This Agreement terminates on sale to non-related third party buyer.

(e) <u>Automatic Termination</u>.  This Agreement shall terminate automatically if a bankruptcy petition is filed by or against Owner or Manager, or if either makes an assignment for the benefit of creditors to take advantage of any insolvency or similar law. Notwithstanding the foregoing, if there is a filing of an involuntary bankruptcy petition, this Agreement shall not be terminated unless the involuntary petition is not dismissed within sixty (60) days.

(f) <u>Continuing Liability</u>. If this Agreement is not renewed or is terminated, the Parties shall remain liable to one another for all obligations incurred prior to the date of expiration or termination.

(g) <u>Duties on Termination</u>.  If this Agreement is not renewed or is terminated, Manager shall cooperate with Owner in the transfer of its responsibilities to Owner or Owner's designee. In particular, Manager shall on or before the date on which this

AXIS001520

Agreement expires or is terminated, turn over to Owner (i) custody and possession of the Property, including all keys; (ii) all leases, service contracts, books, records and documents relating to the Property in Manager's custody or control (copies of which may be retained by Manager); (iii) all funds of Owner then remaining in Manager's possession, less any deductions or reserves properly made by Manager pursuant to this Agreement including, but not limited to, its management fees; and (iv) such authorizations and letters of direction addressed to tenants, occupants, suppliers, banks and other parties as Owner may reasonably require.

(h) <u>Final Accounting</u>. If this Agreement is not renewed or is terminated, Manager shall prepare a final accounting of all fees, expenses and other monies due Owner or Manager within thirty (30) days of the date on which this Agreement expires or is terminated. Manager shall at that time remit to Owner any amounts due Owner less any outstanding management fees or other amounts due to Manager. Owner shall within thirty (30) days of the date on which this Agreement expires or is terminated pay to Manager the balance of any outstanding management fees or other amounts due to Manager if Owner's account is insufficient to pay such fees or other amounts.

10. **<u>MISCELLANEOUS</u>**.

(a) <u>Section Headings</u>. The section headings in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the provisions of this Agreement.

(b) <u>Assignment</u>. None of the rights, interests, duties or obligations created by this Agreement and imposed on Manager may be assigned, transferred or delegated in whole or in part without the consent of Owner.

(c) <u>Notice</u>. Any notice given pursuant to this Agreement must be in writing and may be given or served by depositing the same in the United States mail, postage prepaid, by certified or registered mail, return receipt requested, by delivering same to an officer or agent of such party, by facsimile transmission, or by a nationally recognized overnight courier service. Notice shall be effective when received at the address of the addressee. Notice shall be given as follows:

TO OWNER:

Atlas West End Silver Hill LLC
2200 Pennsylvania Ave., NW, Fl. 4
Washington, DC  20037

Attention: Jeff S. Wainwright

With Copy to:

Dave Sherbal
Heschel Asset Management
841 NW 124th Ave.
Coral Springs, FL  33071


TO MANAGER:

Gates, Hudson & Associates, Inc.
3020 Hamaker Court
Suite 301
Fairfax, VA  22031

Attention:  Patricia Blackburn

  (d) <u>Entire Agreement</u>.  This Agreement (including attachments) contains the entire agreement between the Parties, and no oral statements or prior written matter not specifically incorporated herein shall be of any force and effect.  No variation or modification hereof or changes hereto shall be binding on either party unless set forth in writing and signed by the Parties hereto.

  (e) <u>Governing Law</u>.  This Agreement shall be interpreted and governed by the laws of the Commonwealth of Virginia without regard to its conflict of laws principles.

  (f) <u>Competition</u>.  Manager has the right, notwithstanding this Agreement or any of Manager's duties hereunder, to manage, own, lease, develop or invest in any other real estate or business, whether or not it is competitive with the Property.

  (g) <u>Arbitration.</u> The Parties agree to submit all disputes arising out of or relating to this Agreement to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  The arbitration shall be held in Fairfax, Virginia at a mutually agreeable location.  The cost of the arbitrator shall be shared equally by the Parties.  The Parties agree to abide by any award rendered in such proceedings.  Any award shall include costs and reasonable attorneys' fees to the substantially prevailing party.  Such award shall be final and binding on the Parties and judgment may be entered in the courts of the Commonwealth of Virginia or any other court having jurisdiction to confirm and enforce such award.  The provisions of this Section 10(g) shall survive the termination of this Agreement.

  (h) <u>Agency</u>.  Manager is Owner's agent with respect to Manager's duties hereunder.  Manager shall have no other duties to Owner except for those duties that are set forth in this Agreement.  Nothing in this Agreement or in the relationship between the Parties shall be construed to create a partnership, joint venture, or other similar relationship.

AXIS001522

(i) <u>No Waiver</u>. The failure by either party to insist on the strict performance of the obligations, covenants, agreements, terms or conditions of this Agreement, or to exercise any right or remedy available upon a breach of this Agreement, shall not constitute a waiver, and no breach shall be waived, altered or modified unless in writing.

(j) <u>Severability</u>. If any part of this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall be reformed to the extent possible. If such provision cannot be reformed, it shall be severed from the Agreement and the remaining portions of the Agreement shall be valid and enforceable.

(k) <u>Counterparts/Facimile</u>. This Agreement may be executed in counterparts and by facimile signature.

(l) <u>Construction</u>. The Parties hereto have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumptions or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

(m) <u>Binding Effect</u>. This Agreement shall bind the Parties' respective successors, administrators and assigns.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

[Signatures on following page]

AXIS001523

**OWNER:**

ATLAS WEST END SILVER HILL LLC

By: _[signature]_
Dave Sherbal
As Agent for owner
Title: Authorized Signatory


**MANAGER:**

GATES, HUDSON & ASSOCIATES, INC.

By: _____
Patricia Blackburn

Title: President

AXIS001524

**OWNER**:

ATLAS WEST END SILVER HILL LLC

By: _____
      Dave Sherbal

Title: Authorized Signatory


**MANAGER**:

GATES, HUDSON & ASSOCIATES, INC.

By: _____
      Patricia Blackburn

Title: President

11

AXIS001525