# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 22-00769-BAH |
| AXIS INSURANCE COMPANY, | * | |
| Defendant. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Twin City Fire Insurance Company ("Hartford")[1] brought suit against AXIS Insurance Company ("AXIS") seeking reimbursement of amounts paid defending a property management company, Gates Hudson & Associates, Inc. ("Gates Hudson") and its two employees in a carbon monoxide poisoning civil suit. ECF 1 (Complaint), ECF 21 (Amended Complaint). Pending before the Court are two motions: (1) AXIS' Motion for Partial Summary Judgment ("AXIS' Motion"), ECF 70, and Hartford's Cross-Motion for Partial Summary Judgment on Tender Obligations ("Hartford's Motion"), ECF 73. Both parties filed oppositions, ECFs 73, 76 and replies, ECFs 76, 80. All filings include memoranda of law and exhibits.[2] The Court has

---

[1] Originally, Twin City Fire Insurance Company brought suit against Defendants with another Plaintiff, Hartford Casualty Insurance Company. *See* ECF 1, at 1. When Twin City Fire Insurance Company amended its complaint on July 25, 2022, it eliminated Hartford Casualty Insurance Company as a party. *See* ECF 21, at 1. Because the parties referred to both Plaintiffs as "Hartford," ECF 1, at 1, and continue to do so even after Hartford Casualty Insurance Company was terminated, *see* ECFs 70, 73, 76, 80, the Court will use the same abbreviation to avoid confusion.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, AXIS' Motion is **DENIED** and Hartford's Motion is **GRANTED**.

## I.   BACKGROUND

This case concerns a web of agreements over indemnification and costs associated with the obligation to defend. Atlas West End Silver Hill LLC ("Atlas") owns an apartment building (the "Property"). ECF 70-3, at 4 ¶ 9. Atlas hired Gates Hudson to manage the Property. *Id.* at 5 ¶¶ 15–16; ECF 70-3, at 88–99. Atlas' insurance company is AXIS, ECF 70-3, at 101–87, the Defendant in this suit, ECF 21, at 5–6; and Gates Hudson's insurance company is Hartford, ECF 70-3, at 189–273, the Plaintiff in this suit, ECF 21, at 1. The relationship between the relevant groups is displayed graphically below.



When Gates Hudson and Atlas were sued by apartment residents following a carbon monoxide leak, *infra* Section I.A.4, Gates Hudson contacted Atlas seeking Atlas' insurer, AXIS, to defend and indemnify Gates Hudson pursuant to the Gates Hudson–Atlas Property Management Agreement, *infra* Section I.A.5. AXIS was notified of the suit and Gates Hudson's request within weeks, however, AXIS never issued a disclaimer or approval of coverage to Gates Hudson. *Id.*; *see also infra* Section I.A.6. As a result, Hartford, who was orally informed that AXIS denied coverage, *id.*, expended sums to defend Gates Hudson, and on January 7, 2022, tendered to AXIS directly, asking AXIS to lead the defense of Gates Hudson pursuant to the Gates Hudson–Atlas Property Management Agreement, *infra* Section I.A.7. When AXIS refused, Hartford filed suit seeking a declaratory judgment stating that AXIS was responsible for defending Gates Hudson

from the beginning of the carbon monoxide litigation and indicating an entitlement to reimbursement for sums Hartford spent defending Gates Hudson. *Infra* Section I.B. Below, the Court describes the agreements between the respective groups and the underlying lawsuit that brought about the controversy over the obligation to defend.

### A. Factual Background

#### 1.    The Gates Hudson–Atlas Property Management Agreement

On March 1, 2016, Atlas, the owner of a residential apartment complex located in Suitland, Maryland, ECF 70-3, at 4 ¶ 9, hired Gates Hudson to manage the Property. *Id.* at 5 ¶¶ 15–16; ECF 70-3, at 88–99 (Property Management Agreement).

The Property Management Agreement, which references Atlas as the "Owner" and Gates Hudson as the "Manager" throughout, included the following indemnification provisions:

### 7.    **INDEMNIFICATION**

(a) <u>Indemnification By Owner</u>. Owner agrees to indemnify and hold Manager and Manager's officers, directors, stockholders and employees harmless from and against any and all costs, expenses, reasonable attorneys' fees, suits, liabilities, damages, judgments, rulings, settlements, claims for any damages or governmental proceeding (civil or criminal) ("Indemnified Claim"), in any way relating to the Property, the management or leasing of the Property by Manager, or the performance or exercise by Manager, except for those matters arising out of the gross negligence or willful misconduct of Manager.

(b) <u>Appointment of Counsel</u>. If an Indemnified Claim is brought or asserted against Manager, then Owner, upon notice from Manager, shall assume the investigation and defense thereof, including the employment and payment of Manager's attorneys and payment of all of Manager's reasonable expenses. If a claim or action is brought against Manager but not Owner, or if Manager reasonably determines that it requires separate counsel to protect its interests because the interests of Owner and Manager conflict, Manager may select its own counsel to be paid by Owner, subject to the prior approval of Owner, which shall not be unreasonably withheld. In cases of gross negligence or willful misconduct of Manager, Manager will pay its own expenses and expenses of Owner.

(c) <u>Indemnification By Manager</u>. Manager agrees to indemnify and hold Owner and Owner's officers, directors, stockholders and employees harmless from and against any Indemnified Claim in any way relating to the Property, the management

3

or leasing of the Property by Manager, or the performance or exercise by Manager of the duties, obligations, powers or authorities herein or hereinafter granted to Manager, except for those matters arising out of the gross negligence or willful misconduct of Owner.

ECF 70-3, at 92–93 § (7)(a)–(c) (all emphasis in original).

Additionally, Atlas agreed to purchase insurance and list Gates Hudson as an additional insured, and Gates Hudson agreed to purchase insurance that listed Atlas as an additional insured. ECF 70-3, at 93 § 8(a)–(b). Both agreed that Atlas's insurance would be "primary and non-contributory." ECF 70-3, at 94 § 8(c).

### 2. The Atlas–AXIS Insurance Policy

AXIS issued a Commercial General Liability Policy to Atlas, policy number P-001-000012089-02, effective July 10, 2018, to July 10, 2019, with policy limits of $1 million per "occurrence" (the "AXIS Policy"). ECF 70-3 (Axis Policy), at 102–87. The AXIS Policy indicated that AXIS agreed to cover damages because of "bodily injury" caused by an "occurrence", defined as an "accident", that occurred during the policy period. *Id.* at 104; *id.* at 118 § V(13) ("'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.").

Additionally, the AXIS Policy provides that AXIS has a duty to defend Atlas in any "suit" alleging such damages. *Id.* at 104 § I(1)(a); *id.* at 119 § V(18) ("'Suit' means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.").

The AXIS Policy includes two provisions by which someone other than Atlas may be covered by the policy: one for indemnitees and one for additional insureds. *See* ECF 70-3, at 112 § I(Supplemental Payments)(2) (outlining conditions for AXIS to defend an indemnitee when AXIS is also defending an insured against a "suit"); *id.* at 113 § II(2)(b) (identifying "any person

(other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager" as an additional insured).

AXIS' policy also states that its duty to defend and pay damages is limited. *See id.* at 104 § 104 § I(1)(a)(1)–(2); *id.* at 113 § III(1)(a)–(b) (noting the limits of insurance apply regardless of the number of insureds or the number of suits brought). The agreement states that AXIS may:

> at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> (1) The amount we will pay for damages is limited in Section **III**–Limits Of Insurance; and
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B**.

*Id.* at 104 § I(1)(a)(1)–(2); (emphasis in original); *see* ECF 101 (limiting insurance for each occurrence to $1,000,000).

The AXIS Policy includes a notice provision, that provides:

> If a claim is made or "suit" is brought against any insured, you must:
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
> (2) Notify us as soon as practicable.
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

*Id.* at 114 § IV(2)(b).

Finally, AXIS identifies the Policy as "primary." ECF 70-3, at 115 § IV(4)(a) ("This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below."); *id.* at § IV(4)(b) (listing circumstances in which AXIS' Policy would be "excess").

3.    The Gates Hudson–Hartford Insurance Policy

Hartford issued a Special Multi-Flex Policy to Gates Hudson, policy number 20

UUNIB5054 Policy Term, effective January 1, 2019, to January 1, 2020 (the "Hartford Policy"),

with limits of $1 million per "occurrence." ECF 70-3, at 197, § I(1)(a); *id.* at 192. This policy

was similar in many material respects to the AXIS–Atlas Policy, as it had the same $1,000,000 cap

per "occurrence," *id.* at 192, defined as an "accident" that occurs during the policy period, and

contained an obligation to defend Gates Hudson in "any 'suit'" alleging such damages, *id.* at 197

§I(1)(a); *see also id.* at 216 §V(16) (defining occurrence identically to AXIS' Policy).

Hartford included a "Pollution" exclusion, which excludes coverage for "bodily injury"

that is "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration,

release or escape of "pollutants": (a) At or from any premises. . . ." *Id.* at 199 §I(2)(f); *see also id.*

at 216 § V(18) (defining "Pollutants" as "any solid, liquid, gaseous or thermal irritant or

contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste").

Additionally, the Hartford Policy stated: "With respect to your liability arising out of your

management of property for which you are acting as real estate manager, this insurance is excess

over any other valid and collectible insurance available to you, whether such insurance is primary

or excess." ECF 73-2, at 189 § B(4)(b).

4.    The *Padmore* Lawsuit

Residents of the Property brought suit alleging that at the end of January 2019, "[f]or a

period of at least a week, the Hot Water Heater operated and maintained by Property Defendants

. . . discharged carbon monoxide directly into the interior of the Property rather than discharging

the combustion gasses out of the Property." ECF 70-3, at 12 ¶ 67; *id.* at 8 ¶ 38 (indicating residents

began feeling ill during the week of January 20, 2019); *id.* at 10 ¶¶ 48–49 (alleging that by the end

6

of the week, Prince George's County Fire Department personnel detected dangerous levels of carbon monoxide).

The lawsuit was captioned as *Wayne Padmore et al. v. Atlas West End Silver Hill, LLC et al.*, Case No. CL20-14812, and brought in the Circuit Court for Prince George's County ("*Padmore* Lawsuit"). *See* ECF 70-3, at 3–86; *id.* 5–6 ¶¶ 18, 20. The residents named Atlas, Gates Hudson, and two Gates Hudson employees as defendants. *See* ECF 70-3, at 3; *id.* 5–6 ¶¶ 18, 20 (suing the maintenance technician at the Property, Andre Ferrell, and the Property manager, Danielle Samuels). The resident plaintiffs sought damages due to carbon monoxide poisoning caused by the malfunctioning water heater at the Property. *See id.* at 12 ¶ 68; *id.* at 13 ¶ 69 ("All Defendants' failures proximately caused Plaintiffs' carbon monoxide poisoning.").

Gates Hudson was served with the lawsuit on August 13, 2020. *See* ECF 70-1, at 3.

### 5.   Gates Hudson's Purported Tender to AXIS via Atlas

One day after Gates Hudson was served, Gates Hudson representative Danielle Serrano, sent an email to Atlas' representative, Lloyd Grosklags, stating as follows:

> Please see attached a Complaint and Discovery for Silver Hill that was served on 8/13/20. This stems from a carbon monoxide leak that occurred in January 2019. Can you please forward to the carrier, as a response is required within 30 days of the date we were served. It's likely there is already a claim established for this incident, as we did receive an attorney letter in February 2019. Gates Hudson and two of our employees are listed as defendants, so I would like to have confirmation that the attorney assigned to this claim will also be representing all parties listed as defendants.

ECF 70-3, at 288. Mr. Grokslags agreed to forward the information to AXIS, though indicated confusion about Ms. Serrano's claim regarding defense and indemnification. *Id.* at 287 ("I can indeed forward this along to our insurance carrier—however, I don't believe they will be representing Gates Hudson or the two site employees but rather will be representing Atlas West

End Silver Hill LLC. Does this coincide with what you would expect in this scenario?"). Ms. Serrano responded on August 31, 2020:

> It is my understanding that the property indemnifies Gates Hudson, so the carrier should represent both the property and Gates Hudson. The insurance carrier will request a copy of our management agreement to confirm, which I have attached. Can you please confirm with me once you hear back from the carrier? We have to respond by 9/12/20.

*Id.* at 287.

On September 3, 2020, Ms. Serrano wrote: "Lloyd—can you please confirm that the carrier is indemnifying and defending Gates Hudson and will file a timely answer? With the response deadline coming up, we don't want to be scrambling at the last minute." *Id.* at 285.

At that point, on September 3, 2020, Mr. Grosklags could not confirm that Axis would be representing Gates Hudson. *See id.* ("Hey Danielle, I cannot confirm that the carrier is indemnifying and defending Gates Hudson, but I have added Karen Tribik and Paul Margiotta from Marsh [Atlas' broker] who may be able to help clarify how this claim/defense will proceed. Thank you!").

That same day, Ms. Serrano asked the representatives of Atlas' broker, Karen Tribik and Paul Margiotta, "can someone please confirm that the insurer will be defending the Gates Hudson entities and associates and filing a timely answer?" *Id.* at 285. Mr. Margiotta responded that he did not "see Gates Hudson listed as a named insured on the policy. We do have the broad named insured endorsement on the policy that extends coverage to partnerships, [Joint Ventures], etc. Please see below. Can you please explain the relationship between Gates Hudson and Atlas Real Estate Partners, LLC?" *Id.* at 283. Ms. Serrano responded: "We are the managing agent. Attached is the Property Management Agreement, which states that we are indemnified." *Id.*

8

On September 3, 2020, a different representative of Atlas' broker, Mark Maytola, emailed

AXIS' representative, Martee Stokes,[3] providing the first written notice to AXIS of Gates

Hudson's request. *Id.* at 282. Mr. Maytola wrote:

> Hi Martee, Thank you so much for taking my call on this matter.
>
> As I mentioned, there is a bit of a short burn on this as the suit was served on 8-13-2020, with a 30 day response date. Also, the managing agent, Gates Hudson, is seeking defense and indemnification pursuant to the attached Property Management Agreement. Please review as needed. I've cc'd Danielle Serrano at Gates Hudson to keep her in the loop. My colleague, Karen Tribik, is the primary Casualty Claims consultant on Atlas Real Partners but she is out on PTO this week. She will be back Tuesday after Labor Day.

*Id.* at 282. Thereafter, on September 9, 2020, Mr. Margiotta emailed AXIS that "[p]er the property

management agreement, Atlas West End Silver Hill LLC should be providing defense costs and

indemnity for Gates Hudson & Associates." *Id.* at 279.  Mr. Margiotta provided contact

information for Gates Hudson's broker, and Ms. Stokes agreed to take another look. *Id.* at 278.

Ms. Tribik, the assigned claims advocate working on Atlas' account wrote to Ms. Stokes one day

later, saying "I've read the property management agreement, and as Paul mentions Atlas is to

indemnify Gates Hudson the property manager.  If you would provide defense counsel's contact

information. Also, please confirm that the suit has been answered on behalf of Atlas/Gates or an

extension has been requested." *Id.*

Additionally, Ms. Stokes emailed Mr. Margiotta and Ms. Tribik a status update on

September 9, 2020, and indicated she "referred the summons and complaint to Defense Counsel

for conflict check while AXIS continues its review of coverage." *Id.* at 280. Ms. Stokes indicated

AXIS "receive[d] the suit for review of coverage [on] September 1." *Id.* Ms. Stokes then asked

---

[3] Ms. Stokes was a claims specialist assigned by AXIS for the *Padmore* action. ECF 70-3, at 313 (AXIS' response to interrogatories).

Atlas' broker to "tender the Complaint to Gates Hudson & Associates carrier for review of coverage" given that Atlas is "an additional insured under the Gates Hudson & Associates policy, according to the Property Management Agreement." *Id.*

Ultimately, Hartford asserts that "AXIS never responded to Gates Hudson's tender." ECF 73, at 9. According to AXIS' claim file, AXIS issued a coverage position letter to Atlas alone on October 30, 2020, *see* ECF 73-5, but did not convey an acceptance or denial of Gates Hudson's request for defense and indemnification to Gates Hudson or Hartford. ECF 73, at 9.[4] As Gates Hudson tendered to Hartford as well, Hartford responded on October 8, 2020, indicating it would defend Gates Hudson "under a full reservation of rights." ECF 73-4, at 4.

### 6.   Hartford Attempts to Obtain a Formal Coverage Denial

Hartford representative Devon York reached out to Ms. Stokes from AXIS again a year later, "as depositions were underway in *Padmore* and the cost of defense was increasing." ECF 73, at 9 (citing ECF 73-6). Mr. York and Ms. Stokes emailed on November 18, 2021, seeking to set up a call to discuss the case. ECF 73-6, at 2. Afterwards, on December 9, 2021, Mr. York wrote "On our call, you stated you would send us your coverage denial for Gates Hudson as well as a copy of the policy. If you can send that documentation to me at your earliest convenience it would be greatly appreciated." *Id.* at 73-7, at 2. On December 21, 2021, another Hartford representative, Peter Walden, wrote Ms. Stokes indicating Mr. Walden assumed handling the matter and again requesting Ms. Stokes sent a copy of the denial and a copy of the AXIS policy. ECF 73-8, at 2 ("Can you send me a copy of both of these items ASAP as so that I may review?"). On January 3, 2022, Mr. Walden again reached out to Ms. Stokes. ECF 73-9, at 2 ("Hello Martee—

---

[4] That AXIS did not respond to Gates Hudson is not a fact in dispute. *See* ECF 76, at 2 (arguing that there was no need to respond when "there had [never] been a tender for coverage under the AXIS Policy in the first place").

I hope you had a nice holiday. I am following up on the email below and request a copy of the denial and policy ASAP. Please advise as to when I can expect copies."). It does not appear from the record that a copy of the denial was sent. *See supra* note 4.

### 7.   Hartford Tenders to AXIS and AXIS tenders to Hartford

The *Padmore* litigation was scheduled for mediation on January 13, 2022. ECF 70-3, at 276. By January 7, 2022, Hartford had retained Kramon & Graham for representation. *See id.* In a letter to Atlas, AXIS, and Ms. Tribik, Hartford's attorney indicated "Hartford will be looking to AXIS, Atlas' umbrella/excess carrier, and Atlas to assume primary responsibility for Hartford's insured, Gates Hudson & Associates Inc., in connection with any settlement offer." *Id.* Attaching Ms. Tribik's emailed acknowledgement that Gates Hudson was to be indemnified, Hartford's attorney stated: "We expect AXIS to assume the primary indemnity obligation for Atlas at the January 13 mediation, to assume the defense of Gates Hudson and its employees, and to reimburse Hartford for all fees and costs it has incurred to defend Gates Hudson and its employees." *Id.* at 277.

Then, by letter dated January 12, 2022, AXIS responded to Hartford, requesting that Hartford defend and indemnify Atlas pursuant to the cross-indemnification provisions of the Property Management Agreement. *See* ECF 70-3, at 291. AXIS wrote:

> Gates Hudson is required to obtain commercial general liability insurance in the amount of $1,000,000 per occurrence and an umbrella policy in excess of the general liability with a minimum limit of $13,000,000. The Agreement further provides, under 8.(c) that "[Gates Hudson's] liability policies required hereunder shall list [Atlas] as an additional insured." As Gates Hudson was required to obtain commercial general liability insurance naming Atlas as an additional insured, we tender this matter to Hartford to defend and indemnify Atlas.

*Id.*

11

8.    The Mediation and Lawsuit

On the morning of the mediation, Hartford's counsel filed suit against Gates Hudson, alleging that Hartford had no duty to defend or indemnify Gates Hudson for the *Padmore* Lawsuit based on the Pollution exclusion within the Hartford Policy. ECF 70-3, at 302–08; *id.* at 199 § II(f). Thereafter, at the mediation on January 13, 2022, AXIS' representative, Ms. Stokes, tendered the $1,000,000 limits of the AXIS Policy to Zurich, an excess liability insurer for Atlas, to use to settle the *Padmore* plaintiffs' claims against Atlas. ECF 70-3, at 314. After AXIS tendered the $1,000,000, Ms. Stokes was no longer involved negotiating the settlement. *Id.*

By February 9, 2022, the trial court advised all counsel of record that the parties had settled the *Padmore* Lawsuit. *Id.* at 315. On March 3, 2022, counsel to Hartford contacted counsel to AXIS seeking reimbursement for defense costs. *Id.* at 294.

### B.   Procedural History

On March 31, 2022, Hartford filed suit against AXIS,[5] ECF 1, seeking declaratory relief. *Id.* at 1. On July 25, 2022, Hartford filed the operative complaint, ECF 21. The case was transferred to the undersigned on October 23, 2023. The parties have filed cross-motions, ECF 70, 73, which are fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether

---

[5] Zurich American Insurance Company ("Zurich") was also sued by Hartford, however, on July 20, 2022, Hartford filed a joint motion to dismiss with Zurich, to dismiss all claims against Zurich with prejudice, ECF 17, which the Court approved, ECF 18.

12

it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court cannot weigh evidence, *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (citing *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659–60 (4th Cir. 2018)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).

Finally, "[w]hen considering cross-motions for summary judgment, the court must consider 'each motion . . . individually' and view 'the facts relevant to each . . . in the light most favorable

13

to the nonmovant.'" *Hunt v. Kadlick*, 972 F. Supp. 2d 772, 775 (D. Md. 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)).

## III.    ANALYSIS

A Court sitting in diversity applies the choice of law rules of the forum in which the Court sits.[6] *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). Applying Maryland choice-of-law rules, which includes the law of *lex loci contractus, W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*, 814 F.3d 171, 176 (4th Cir. 2016), when considering an insurance policy dispute, the Court applies the law of "the state in which the policy is delivered and the premiums are paid.'" *Id.* (quoting *Cont'l Cas. Co. v. Kemper Ins. Co.*, 920 A.2d 66, 69 (Md. App. 2007)). The AXIS Policy was delivered to Atlas in New York, New York. *See* ECF 70-3, at 101. Therefore, considering Hartford's claim for reimbursement of defense costs is premised on Gates Hudson and its employees being entitled to insured status under the AXIS Policy, New York law governs this dispute.[7]

The parties appear to agree that generally, under New York law, an insurer cannot recover pre-tender defense costs from another insurer. *See* ECF 70-1, at 10; ECF 73, at 21 (acknowledging as such, but arguing for an exception). However, the dispute lies more so in when a proper tender was made. AXIS argues that (1) Hartford itself did not directly tender to AXIS until January 7, 2022, ECF 70-1, at 11, and (2) if Gates Hudson's emails constitute a tender, Hartford cannot "piggyback" off a tender from Gates Hudson, *id.* at 15. Hartford argues that (1) emails from Gate

---

[6] AXIS is "citizen of Illinois and Georgia" and Hartford "is a citizen of Indiana and Connecticut." ECF 21, at ¶¶ 1–2; id. ¶¶ 3–4 (asserting diversity jurisdiction).

[7] As a preliminary matter, the parties agree that New York law applies to the interpretation of AXIS' insurance policy with Atlas. *See* ECF 70-1, at 9; ECF 73, at 12 n.5. While Hartford does not contest the applicability of New York law to interpreting the AXIS Policy, Hartford asks this Court to apply Maryland equitable law when reaching the question of whether implied indemnification applies in this case. *See* ECF 70-3, at 12 n.5. As the Court finds Hartford is entitled to its requested relief under New York law, *see infra* Section III.C.3, the Court need not reach this issue.

Hudson's representative constituted an adequate tender, *id.* at 11–12; and (2) Hartford's claim against AXIS "aris[es] under the theory of recovery of implied indemnification." ECF 73, at 18–24.

### A.   New York Law on the Duty to Defend

"An insurer's duty to defend its insured is exceedingly broad." *Travelers Prop. Cas. Co. of Am. v. Hudson Excess Ins. Co.*, 660 F. Supp. 3d 187, 192 (S.D.N.Y. 2023) ("*Travelers*") (quoting *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*, 930 N.E.2d 259, 261 (N.Y. 2010) (internal quotation marks and citation omitted)). "That obligation is separate from and broader than the duty to indemnify." *Id.* (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 484 N.E.2d 1040, 1041–42 (N.Y. 1985)). "[A]n insurer has a duty to defend 'whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be.'" *Id.* (quoting *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). Accordingly, if a "complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased, the insurer is obligated to defend." *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 930 N.E.2d 259, 261 (N.Y. 2010) (emphasis added) (quoting *BP A.C. Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1131 (N.Y. 2007)). "This standard applies equally to additional insureds and named insureds." *Travelers*, 660 F. Supp. 3d at 192 (quoting *Regal Const. Corp.*, 930 N.E.2d at 261–62).

Accordingly, "an examination of whether an insurer has a duty to defend must focus on the information made available to the insurer and the insurer's actual knowledge at the time a request for a defense was tendered in light of the language of the policy." *Mass. Bay Ins. Co. v. Penny Preville, Inc.*, Civ. No. 95-4845, 1996 WL 389266, at *5 (S.D.N.Y. July 10, 1996).

When two insurers have a duty to defend, "the possibility of dual coverage . . . does not mean that both insurers are equally obligated to defend the underlying lawsuit." *Travelers*, 660 F.

Supp. 3d at 194. Rather, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage . . . is determined by comparison of their respective 'other insurance' clauses. . . ." *Id.* (quoting *Sport Rock Intern., Inc. v. Am. Cas. Co.*, 878 N.Y.S.2d 339, 344 (N.Y. App. Div. 2009)). "These clauses can be used to establish which policy operates to provide *primary* coverage and which policy's coverage is *excess*." *Id.* (emphasis added). "The primary insurance must pay out first and excess insurance need only be paid out when the primary insurance has been exhausted up to the policy limit." *Id.* (quoting *Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 276 (S.D.N.Y. 2020)).

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co.*, 962 N.Y.S.2d 9, 11 (N.Y. App. Div. 2013)).

### B.   AXIS' Partial Motion for Summary Judgment

AXIS asks the Court to enter partial summary judgment declaring that if Hartford is entitled to recover any damages from AXIS in this case, that those damages be "limited to defense costs *incurred after January 7, 2022*." ECF 70-1, at 15 (emphasis added).

Generally, under New York law, there is no obligation to defend until a party offers notice to the insurer of a complaint that "potentially" may fall within the protection purchased. *Regal Const. Corp.*, 930 N.E.2d at 261. This point is undisputed.[8] AXIS seeks to establish that the only

---

[8] *See supra* note 7. Hartford argues that it is still entitled to pre-tender defense fees even if the Court finds January 7, 2022, constitutes the only effective tender date. *See* ECF 73, at 21–24. As the Court finds AXIS has not met its burden of establishing the Gates Hudson communications in August and September 2020 were not a proper tender as a matter of law, the Court need not reach this argument.

effective tender occurred on January 7, 2022, and that Hartford is only entitled to damages after that date. ECF 70-1, at 10–11. Hartford seeks to establish that Gates Hudson's email communications from August 14, 2020, through September 3, 2020, constituted an effective tender, triggering AXIS' duty to defend Gates Hudson and Gates Hudson's two employees. *See* ECF 73-1; ECF 76. As the moving party AXIS bears the burden of establishing that Hartford's proposed tender in August and September of 2020 was improper and did not trigger the duty to defend. *See Tolan*, 572 U.S. at 657; *Scott*, 550 U.S. at 378. AXIS has not met its burden.

AXIS argues: (1) that Gates Hudson's emails were substantively insufficient to constitute notice that it was seeking defense as an additional insured party, as opposed to merely seeking indemnification, *id.* at 13, and (2) that Gates Hudson's emails were insufficient to constitute notice because they were sent to Atlas—not AXIS. ECF 70-1, at 11–14. Hartford argues that there is no support in New York law for AXIS' criticisms regarding the adequacy of the notice and that any deficiencies in notice fail to defeat the effectiveness of Hartford's purported tender. ECF 73, at 13–18. The Court agrees with Hartford.

> i.   AXIS has not demonstrated that New York law treats notice as per se insufficient merely because the additional insured does not specify which sub-provision of the insurer's policy the tender relates to, particularly when the insurer's policy does not require such notice.

AXIS asserts that "New York requires an insured to inform the insurance carrier that it is seeking coverage under the policy at issue, explain why, and provide the necessary information in support its tender." *See* ECF 76, at 6. Hartford argues that such specifics are only required if they are incorporated into the notice provisions of the relevant insurance contract. *See* ECF 73, at 13 (citing *Pearson Cap. Partners LLC v. James River Ins.*, 151 F. Supp. 3d 392, 406 (S.D.N.Y. 2015)); *see also Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co.*, Civ. No. 9-4912, 2010 WL 3629470, at *6 (S.D.N.Y. Sept. 17, 2010) ("*Liberty*") ("Under New York law, 'compliance with a policy's

notification provisions is a condition precedent to the insurer's liability under the policy.'" (quoting

*Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004))); *see also*

*Power Auth. v. Westinghouse Elec. Corp.*, 502 N.Y.S.2d 420, 421 (N.Y. App. Div. 1986) ("An

insurer's obligation to cover its insured's loss is not triggered unless the insured gives timely notice

of loss *in accordance with the terms of the insurance contract.* (emphasis added) (citing omitted)).

To support its position that Gates Hudson's purported tender was not specific enough,

AXIS compares this case to *Liberty*. ECF 70-1, at 11–12 (citing *Liberty*, 2010 WL 3629470, at

*8). However, *Liberty* does not support AXIS' interpretation of New York law when *Liberty*

merely stands for the general rule that a tender must put the insurer on notice of a complaint that

"even potentially" falls within the purchased insurance, *see Regal Const. Corp.*, 930 N.E.2d at

261–62.

In *Liberty*, an additional insured (a company called "Arrow"), sent the following letter to

its subcontractor, Diamond, which was insured by Great American:[9]

> Please be advised that we represent [Arrow] as a defendant in a lawsuit brought by
> Luis Garcia as a result of an April 4, 2006 accident that allegedly occurred while
> Mr. Garcia was working for [Diamond] at [the Premises]. It is alleged that he fell
> from an unprotected sidewalk bridge.

---

[9] In *Liberty*, two companies, Plaza and Arrow, entered a contract for balcony restoration. 2010 WL 3629470, at *1. Arrow subcontracted with Diamond and Rockledge for two different subprojects. *Id.* Garcia, an employee of Diamond, was injured during the Rockledge subcontractor project. *Id.* On June 30, 2006, Garcia sued Plaza and Rockledge seeking monetary damages, and later, on January 8, 2007, Garcia filed an amended complaint to add Arrow as a defendant in the suit. *Id.* Arrow maintained primary general liability insurance with Liberty, and Diamond maintained primary general liability insurance coverage with Great American. *Id.* Ultimately Liberty sued Great American seeking a declaration that Great American owed Arrow a duty of defense as an additional insured in Garcia's suit against Arrow. *Id.* at *5. Arrow asserted that it offered a proper tender by sending the above-quoted letter to Diamond's broker on January 2, 2008. *Id.* at *8.

On October 24, 2007, we served [Diamond] with a third-party summons and complaint, a copy of which is enclosed. Copies of the affidavits of service on those third-party defendants are enclosed.

To date, we have not received an answer on behalf of those third-party defendants, nor have we been contacted by anyone seeking an extension of time to answer the third-party complaint. A copy of the certificate of insurance issued by your company is enclosed. Please immediately forward this letter and the attachments to the applicable insurer to prevent a default judgment.

*Id.* at \*3. Arrow later argued that this letter constituted notice triggering Great American's duty to defend against a suit filed by an injured employee of a subcontractor. *Id.* at \*4. Notably, however, the letter did not attach a copy of the underlying complaint against Arrow. *Id.* It did not expressly request defense in that underlying action, or indemnification from Great American. *Id.* at \*8 ("The letter did not include a tender of defense and indemnification from Arrow or a copy of a written agreement wherein Diamond agreed to name Arrow as an additional insured under the Great American Policy"). Thus, Great American did not have the complaint that might have notified it of whether Arrow was "even potentially within the protection purchased." *See Regal Const. Corp.*, 930 N.E.2d at 261. Ultimately, the *Liberty* court held that the above-quoted letter could not "be read as a request by Arrow for additional insured coverage from Great American," *id.* at \*8, and thus denied Arrow's demand for coverage.[10]

AXIS' comparisons to *Liberty* do not persuade. AXIS claims that "Gates Hudson never explained that it was seeking coverage under the AXIS Policy or why it was seeking such coverage, and never provided the necessary information in support of its claim for coverage under the AXIS Policy." ECF 70-1, at 13. The record demonstrates that these representations are incorrect.

---

[10] Arrow ultimately did send a more detailed request for coverage, but the *Liberty* court determined that the request was untimely and denied coverage. *Liberty*, 2010 WL 3629470, at \*8 ("Because Plaintiffs provide no valid excuse for this delay, Arrow's failure to provide timely notice to Great American constitutes a complete defense to coverage.").

On August 14, 2020, Ms. Serrano emailed Atlas' broker and stated:

Please see attached a *Complaint and Discovery* for Silver Hill that was served on 8/13/20. This stems from a carbon monoxide leak that occurred in January 2019. Can you *please forward to the carrier*, as a response is required within 30 days of the date we were served. It's likely there is already a claim established for this incident, as we did receive an attorney letter in February 2019. Gates Hudson and two of our employees are listed as defendants, so *I would like to have confirmation that the attorney assigned to this claim will also be representing all parties listed as defendants.*

ECF 70-3, at 288 (emphasis added). The subject of this email is clearly seeking to have Atlas'

insurer defend Gates Hudson in the *Padmore* litigation, and Gates Hudson attaches the complaint

(and discovery) to the email. *See id.* On August 31, 2020, Ms. Serrano wrote:

It is my understanding that *the property indemnifies Gates Hudson,* so the carrier should *represent* both the property and Gates Hudson. *The insurance carrier will request a copy of our management agreement to confirm, which I have attached.* Can you please confirm with me once you hear back from the carrier? We have to respond by 9/12/20.

*Id.* at 287 (emphasis added).

Three days later, Ms. Serrano sent an email to two additional representatives of Atlas'

brokers and stated: "We are the managing agent. Attached is the Property Management

Agreement, which states that we are indemnified." *Id.* at 283. That same day Atlas' broker emailed

AXIS' representative and wrote:

Hi Martee, Thank you so much for taking my call on this matter.

As I mentioned, there is a bit of a short burn on this as the suit was served on 8-13-2020, with a 30 day response date. Also, *the managing agent, Gates Hudson, is seeking defense and indemnification pursuant to the attached Property Management Agreement.* Please review as needed. I've cc'd Danielle Serrano at Gates Hudson to keep her in the loop. My colleague, Karen Tribik, is the primary Casualty Claims consultant on Atlas Real Partners but she is out on PTO this week. She will be back Tuesday after Labor Day.

*Id.* at 282 (emphasis added). Thus, as of September 3, 2020, AXIS was notified of the following:

(1) Gates Hudson was seeking "defense and indemnification," (2) that this was in relation to the

suit that was "served on 8-13-2020," in clear reference to the *Padmore* litigation, and (3) Gates

Hudson asserted that an attached Property Management Agreement indicated that AXIS had an

obligation to defend Gates Hudson. Further, Ms. Stokes, an AXIS representative, indicated that

AXIS "receive[d] the suit for review of coverage [on] September 1." ECF 70-3, at 280.

As noted, the focus of the Court's analysis must be on "information made available to the

insurer and the insurer's actual knowledge at the time a request for a defense was tendered in light

of the language of the policy." *Mass. Bay Ins. Co.*, 1996 WL 389266, at *5. The above evidence

indicates AXIS had actual notice that the *Padmore* Complaint's allegations indicated Gates

Hudson employees were negligent and proximately caused the water heater to leak toxic levels of

carbon monoxide, acts that "potentially" fell "within the protection purchased." *Regal Const.*

*Corp.*, 930 N.E.2d at 261. Accordingly, as of September 3, 2020, AXIS was aware that both Gates

Hudson and Atlas were sued in the *Padmore* litigation, Gates Hudson claimed an entitlement to

defense and indemnification, and Gates Hudson had a contract with Atlas that purported to create

such an entitlement.

AXIS' argument that it had no way of knowing whether Gates Hudson was asserting its

status as a potential indemnitee or as an additional insured is immaterial when Gates Hudson

offered sufficient information to put AXIS on notice that potentially defending Gates Hudson fell

under the purchased policy. *See* ECF 70-1, at 13 (failing to cite to caselaw supporting that a tender

must indicate what provision under the insurer's policy the party is seeking the tender pursuant

to). At that point, the "onus here was . . . on AXIS to figure out which coverage, if any, Gates

Hudson was entitled to." ECF 73, at 17.

AXIS' reliance upon *Travelers* is also misplaced. *See* ECF 76, at 5. In *Travelers*, a

plumbing company ("Richards") contracted with New York City Department of Homeless

Services ("DHS") for a plumbing project. 660 F. Supp. 3d at 189. Richards subcontracted with a company called RVS regarding a sewer line replacement project and RVS agreed to obtain insurance and add DHS and Richards as additional insured. *Id.* After an RVS employee ("Keys") was injured falling into an uncovered trench, he sued Richards and the City of New York, who in turn brought third party claims against RVS. *Id.* at 190. Richards' insurer ("Travelers") argued that RVS' insurer ("Hudson") had the duty to defend. *Id.* In a letter dated March 14, 2018, Travelers tendered a defense on behalf of Richards to Hudson, which Hudson denied. *Id.* Travelers followed up clarifying the tender was on behalf of Richards and the City. *Id.* Hudson denied the tender again, and Travelers bore the costs of defense. *Id.*

As it related to Travelers' initial tender on behalf of Richards on March 14, 2018, the Court noted that the question was whether Hudson was on notice of the *possibility* that the injury alleged fell within the protection purchased. *See id.* at 192 (noting RVS' policy with Hudson provided that additional insureds are covered where a bodily injury is proximately caused by the named insured and thus, the "dispositive issue" was whether "the complaint in the underlying lawsuit, or extrinsic evidence from that suit, establishes the *possibility* that the injury at issue was proximately caused by RVS" (emphasis in original)). The *Travelers* court noted that the suit itself did not name RVS as a defendant, nor was RVS identified in any of the pleadings as an involved subcontractor. *See id.* at 193 (noting the complaint contained "passing reference to unnamed 'subcontractors'" which was too vague to notify an insurer of the possibility of coverage). However, extrinsic evidence later put Hudson on notice when the state court in the underlying suit denied RVS' motion to dismiss the third-party complaint. *Id.* This ruling, "establishe[d] that there [wa]s at least a *possibility* that RVS proximately caused the injury suffered by Keys" and once Travelers re-

22

tendered after the state court ruling, Hudson had actual knowledge that triggered the duty of defense. *Id.* (emphasis in original).

Contrary to *Travelers*, the underlying *Padmore* complaint was specific enough to put AXIS on notice of the possibility of coverage. The complaint named Atlas, Gates Hudson, and two Gates Hudson employees as defendants. *See* ECF 70-3, at 3 ¶¶ 8–9; *id.* 5–6 ¶¶ 18, 20. The complaint stated that all Defendants proximately caused the resident plaintiffs' injuries. *Id.* at 13 ¶ 69. The complaint alleged that Gates Hudson was the property manager of Atlas. *Id.* at 5 ¶¶ 15–16; *see also* ECF 70-3, at 113 § II(2)(b) (outlining AXIS' obligation to defend "any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager" as an additional insured). The complaint alleged the type of bodily injury AXIS' insurance covered. *Id.* at 104 § I(1)(a); *id.* at 119 § V(18) ("'Suit' means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.'"); *id.* at 10 ¶¶ 48–49 (alleging the resident plaintiffs suffered from carbon monoxide poisoning). The complaint alleged this bodily injury occurred during the applicable policy period. ECF 70-3, at 12 ¶ 67; *id.* at 8 ¶ 38 (indicating residents began feeling ill during the week of January 20, 2019); *id.* at 10 ¶¶ 48–49 (alleging that by the end of the week, Prince George's County Fire Department personnel detected dangerous levels of carbon monoxide).

Thus, AXIS' assertion that the March 14, 2018, letter in *Travelers* "did not provide facts establishing coverage for the purported additional insured under the policy," ECF 76, at 5, misses the forest for the tress. The *Travelers* holding was that the insurer, "[a]s a practical matter," was not on actual notice of the possibility of coverage when their insured was not named in the underlying suit as a defendant and when there was not yet extraneous information providing such

notice. *Travelers*, 660 F. Supp. 3d at 193. The holding was *not* that a tender must provide a certain level of specificity to trigger the duty of defense, particularly when the insurer is in possession of an underlying complaint putting the insurer on actual notice that such a suit may possibly trigger coverage. *See id.*

Nothing in the two cases AXIS relies upon, *Liberty* or *Travelers*, creates a requirement for notice to indicate a particular subsection within the insurer's policy to constitute a proper tender. *See Liberty*, 2010 WL 3629470, at *8 (faulting Arrow for not including "a written agreement wherein Diamond agreed to name Arrow as an additional insured under the Great American Policy" and for failing to include the underlying complaint for the suit Arrow sought defense—not for failing to include the Great American Policy or for failing to point to its sub-provisions); *Travelers*, 660 F. Supp. 3d at 193–94 (S.D.N.Y. 2023) (faulting the additional insured's first purported tender because the attached complaint did not specify which subcontractor was involved in the underlying suit and holding that once the additional insured provided this information in a second tender with extrinsic sources, the insurer had a duty to defend the additional insured).

Finally, there is nothing in AXIS' notice requirements that would support AXIS' argument that it must be notified of the specific sub-provision of the Policy that creates an entitlement to indemnity or defense. The AXIS Policy includes a notice provision, that provides:

> b.    If a claim is made or "suit" is brought against any insured, you must:
>        (1) Immediately record the specifics of the claim or "suit" and the date received; and
>        (2) Notify us as soon as practicable.
>        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

*Id.* at 114. Nothing in this provision requires the additional insured do anything more than identify the suit, provide specifics of the suit, and to do so as soon as practicable. *Id.* As discussed *infra* Section III.C, Hartford complied with these requirements.

24

A comparison of the notice provisions here to those in *Liberty* further undercuts AXIS'

reliance on these cases as creating per se rules of specificity. In *Liberty*, Great American's notice

requirements were as follows:

> In The Event Of Occurrence, Offense, Claim or Suit
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>  a. How, when and where the "occurrence" or offense took place;
>  b. The names and addresses of any injured persons and witnesses; and
>  c. The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
>  a. The nature and location of any injury or damage arising out of the "occurrence" or offense.
>  Immediately record the specifics of the claims or "suit" and the date received; and
>  b. Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

2010 WL 3629470, at *2. This notice provision required far more information about an individual

occurrence than AXIS' notice provision, which merely requires that AXIS "receive written notice

of the claim or 'suit' as soon as practicable." ECF 70-3, at 114. Thus, the letter at issue in *Liberty*

was deficient both for failing to meet the minimum notice requirements under Ner York law, and

for failing to the comply with the terms of the contract.

AXIS fails to demonstrate that New York law requires a purported additional insured to

indicate the specific sub-provision in the insurer's policy pursuant to which the insured seeks

defense, and AXIS has failed to demonstrate that AXIS' own provisions made such requirements

a precondition for an effective tender.

2.     AXIS has not demonstrated that New York law requires a tender to be communicated directly to the insurer when the insurer's policy does not require such form of notice.

Next, AXIS argues that "[u]nder New York law, a tender for insured status requires notice *to the insurer* that the purported insured is seeking coverage under the policy." ECF 70-1, at 11 (emphasis in original) (citing *Liberty*, 2010 WL 3629470, at *8). AXIS reads into New York law a requirement that a tender be communicated directly to the insurer and not, for instance, forwarded to the insurer by another insured. *See id.* However, neither *Liberty* nor *Travelers* supports this legal conclusion. *See infra.*

In *Liberty*, the party seeking defense (Arrow) communicated with Diamond's broker. *Liberty*, 2010 WL 3629470, at *3. The above-described January 2, 2008, letter was not forwarded to Great American; however, as described above, that letter was not sufficient to constitute an effective tender. *Id.* at *8. It is true that the *Liberty* court did mention that "Arrow's counsel did not send the January 2, 2008 Letter and Arrow's complaint against Diamond *directly to Great American*." *Id.* at *8 (emphasis added). However, the court's point was that Arrow could not seriously assert that a letter, which failed to directly ask for Great American to defend or indemnify, was not sent to Great American, and did not ask the broker receiving it to forward it to Great American, somehow constituted a proper tender that should have put Great American on notice of Arrow's request for defense and indemnification. *Id.*

In this case, however, from the beginning of Gates Hudson representative Ms. Serrano's communications to Atlas, Ms. Serrano asked for the request to be "forward[ed] to the carrier." ECF 70-3, at 288. Ms. Serrano indicated an awareness that "[t]he insurance carrier will request a copy of our management agreement to confirm, which I have attached." *Id.* at 287. All this information, the request and the management agreement, were forwarded *per Ms. Serrano's request* to AXIS representative Ms. Stokes. *Id.* at 282 ("Also, the managing agent, Gates Hudson,

is seeking defense and indemnification pursuant to the attached Property Management Agreement. Please review as needed.").

*Travelers* does not help AXIS' argument either, as the issue in *Travelers* was a vague underlying complaint and there were no disputes about the form of tender. *See generally Travelers*, 660 F. Supp. 3d at 191 (discussing that one insurer tendered to the other, without any discussion of the form of tender).

As AXIS has not demonstrated that New York law supports a bright line rule that tenders must be sent directly to the insurers in order to be valid, the Court also rejects AXIS' argument that "[t]here was never any actual tender communicated by Gates Hudson to AXIS requesting coverage as an insured as required by New York law." ECF 70-1, at 13.

Finally, the AXIS Policy notice provision does not require that AXIS be notified directly from the additional insured. *See* ECF, at 114 (requiring only that "[y]ou must see to it that *we receive* written notice of the claim or 'suit' as soon as practicable" (emphasis added)).

In sum, AXIS seeks a declaration that January 7, 2022, is the date of tender, and necessarily that the August 2020–September 2020 emails do not constitute a tender. ECF 70-1, at 10–14. AXIS has not proven this as a matter of law and AXIS' Motion is **DENIED**.

## C. Hartford's Partial Cross-Motion for Summary Judgment is Granted.

Hartford seeks a declaration on the following liability issues: "[1] Gates Hudson timely tendered its defense to AXIS; [2] AXIS had a duty to defend Gates Hudson from the date of the tender, forward; [3] AXIS breached its duty to defend Gates Hudson; and [4] Hartford has a right of implied indemnity to recoup the costs it spent defending Gates Hudson." ECF 80, at 13. Hartford, as the cross-movant, bears the burden to establish an entitlement to this relief. *Tolan*, 572 U.S. at 657; *Scott*, 550 U.S. at 378. Even construing all facts in a light most favorable to AXIS,

27

Hartford has established an entitlement to this relief, and its cross-motion at ECF 73 will be granted.

### 1.   Gates Hudson timely tendered to AXIS on September 3, 2020, and thereafter AXIS had a duty to defend.

It is worth repeating that "[a]n insurer's duty to defend its insured is exceedingly broad." *Travelers*, 660 F. Supp. 3d at 192 (quoting *Regal Constr. Corp.*, 930 N.E.2d at 261). "[A]n insurer has a duty to defend 'whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer. . . .'" *Id.* (citing *Seaboard Surety Co.*, 64 N.Y.2d at 310). If a "complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased, the insurer is obligated to defend." *Regal Const. Corp.*, 930 N.E.2d at 261 (emphasis added) (quoting *BP A.C. Corp.*, 871 N.E.2d at 1131). Hartford has established that by either September 1, 2020, or at the latest by September 3, 2020, AXIS had sufficient information of a claim against Gates Hudson that "potentially" fell "within the protection purchased," and as such, Hartford had a duty to defend. *Regal Const. Corp.*, 930 N.E.2d at 261.

#### i.   Gates Hudson conveyed sufficient information under New York law and the AXIS' Policy to notify AXIS that it potentially fell within the protections Atlas purchased.

As noted above, Section III.B.1, Gates Hudson received notice that it was added as defendant in the *Padmore* litigation on August 13, 2020. *See* ECF 70-1, at 3. The very next day Gates Hudson representative Ms. Serrano began reaching out to Atlas, Atlas' broker, and shortly thereafter AXIS itself to communicate the tender. *See* ECF 70-3, at 288 (emailing Atlas on August 14, 2020, stating "please forward to the carrier" and "I would like to have confirmation that the attorney assigned to this claim will also be representing all parties listed as defendants"); *id.* at 287 (emailing Atlas on August 31, 2020 that "[i]t is my understanding that the property indemnifies Gates Hudson, so the carrier should represent both the property and Gates Hudson. The insurance

carrier will request a copy of our management agreement to confirm, which I have attached. Can you please confirm with me once you hear back from the carrier?"); *id.* at 285 (Atlas emails on September 3, 2020, looping in Atlas' broker for assistance); *id.* at 283 (Gates Hudson emails broker stating "We are the managing agent. Attached is the Property Management Agreement, which states that we are indemnified"); *id.* at 282 (Atlas's broker emails AXIS on September 3, 2020, indicating "the managing agent, Gates Hudson, is seeking defense and indemnification pursuant to the attached Property Management Agreement. Please review as needed"); *see also id.* at 279 (Atlas' broker emailing AXIS on September 9, 2020, that pursuant to the property management agreement, Atlas "should be providing defense costs and indemnity for Gates Hudson").

A court examining "whether an insurer has a duty to defend must focus on the information made available to the insurer and the insurer's actual knowledge at the time a request for a defense was tendered in light of the language of the policy." *Mass. Bay Ins. Co.*, 1996 WL 389266, at *5. As of September 3, 2020, AXIS was notified that (1) Gates Hudson was seeking "defense and indemnification," that this was in relation to the suit that was "served on 8-13-2020," in clear reference to the *Padmore* litigation, and (2) Gates Hudson asserted an attached Property Management Agreement indicated that AXIS had an obligation to defend Gates Hudson. Further, the underlying complaint in the *Padmore* litigation, named both Atlas, Gates Hudson, and two Gates Hudson employees as defendants. *See* ECF 70-3, at 5–6 ¶¶ 18, 20 (suing the maintenance technician at the Property, Andre Ferrell, and the Property manager, Danielle Samuels); *See id.* at 12 ¶ 68 ("Carbon monoxide migrated from the Property's mechanical room through numerous through wall penetrations into the Plaintiffs' residential units and throughout the Property"); *id.* at 13 ¶ 69 ("All Defendants' failures proximately caused Plaintiffs' carbon monoxide poisoning.");

*see also* ECF 70-3, at 280 (indicating AXIS "receive[d] the suit for review of coverage [on] September 1").

AXIS was aware that its Policy with Atlas covered damages relating to "bodily injury" caused by an "occurrence," defined as an "accident," that occurred during the policy period. *Id.* at 104; *id.* at 118 ("'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."). Thus, by September 3, 2020, AXIS was on notice that a suit for damages was brought based on "bodily injuries" that were an "accident" during the policy period of July 10, 2018 to July 10, 2019, ECF 70-3, at 101; *see also* ECF 70-3 (*Padmore* complaint), at 8 ¶ 38 (indicating residents began feeling ill during the week of January 20, 2019); *id.* at 12 ¶ 67 (indicating at the end of January 2019, "[f]or a period of at least a week, the Hot Water Heater operated and maintained by Property Defendants . . . discharged carbon monoxide directly into the interior of the Property rather than discharging the combustion gasses out of the Property."). There is no dispute that the *Padmore* litigation constituted a "suit" seeking damages for covered "occurrence[s]."

AXIS was also aware that its Policy with Atlas contained avenues by which parties other than Atlas may claim a right to defense or indemnity. *See* ECF 70-3, at 112 (outlining conditions for AXIS to defend an indemnitee when AXIS is also defending an insured against a "suit"); *id.* at 113 (identifying "any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager" as an additional insured). AXIS was aware that Gates Hudson's Property Management Agreement with Atlas included both an obligation to list the other parties as additional insureds on their separate insurance policies, and a cross-indemnification provision. *See* ECF 70-3, at 92–93 (indemnification provision); *id.* at 98 §8(a)–(b) (additional insured requirement). While AXIS may not have known whether Gates Hudson

was claiming indemnitee status or additional insured status—AXIS nonetheless was on notice that "potentially" Gates Hudson was asserting an entitlement to defense for a covered claim in the AXIS policy. Indeed, AXIS' Policy obligated AXIS to defend indemnitees when it was also defending an insured in the same "suit," thus confirming that Gates Hudson and its employees were possibly covered regardless of whether they were indemnitees or additional insureds. ECF 70-3, at 112 § 2 (outlining conditions).

Based on the totality of information AXIS had before it, AXIS was on notice by September 3, 2020, at the latest, of Gates Hudson's tender and that this claim "potentially" fell within the purchased insurance provisions of AXIS' Policy. So long as this tender is considered timely, it will trigger AXIS' duty to defend. For the reasons outlined next, the Court finds the tender was timely.

        *ii.   Gates Hudson's tender was timely.*

The AXIS Policy requires any insured to provide notice of a claim or suit "as soon as practicable." ECF 70-3, at 114 § IV(2)(b). "The term as soon as practicable . . . requires that written notice be given within a reasonable time under all the circumstances." *Deso v. London & Lancashire Indem. Co. of Am.*, 143 N.E.2d 889, 890 (N.Y. 1957) (internal quotation marks and citation omitted); *Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 267 (E.D.N.Y. 2014) ("New York law defines 'as soon as practicable' to mean 'within a reasonable time under all the circumstances.'" (quoting *Sec. Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 293 N.E.2d 76 (N.Y. 1972))). "[E]ven periods of delay as short as two months have been found to be unreasonable as a matter of law." *Gelfman*, 39 F. Supp. 3d at 267–68 (E.D.N.Y. 2014) (citing *Prof'l Prod. Research Inc. v. Gen. Star Indem. Co.*, 623 F. Supp. 2d 438, 444 (S.D.N.Y. 2008); *see, e.g., Neighborhood P'ship Hous. Dev. Fund Co. v. Everest Nat. Ins. Co.*, 58 N.Y.S.3d 356, 357 (N.Y. App. Div. 2017) (holding notification to insurer four months after plaintiff learned of the accident

31

does not comply with the requirement of the insurance policy that the insurer be notified of an occurrence "as soon as practicable" and constitutes late notice as a matter of law).

From the moment Gates Hudson was served on August 13, 2020, ECF 70-1, at 3, approximately two weeks passed before AXIS received the tender on September 3, 2020. ECF 70-3, at 282 (including email communications between Atlas' broker and AXIS representative Martee Stokes). AXIS does not contest that the two-week delay was timely, focusing only on the unreasonableness of the January 7, 2022, tender coming 15 months after Gates Hudson was served. *See* ECF 76, at 7. However, as explained above, the Court finds that communications between Gates Hudson, Atlas, Atlas' broker, and AXIS between August 14, 2020, and September 3, 2020, constitutes an effective tender. *Supra* Section III.C.1.i. Thus, because AXIS does not contest the timeliness of the emailed tender on September 3, 2020, this argument is conceded. *See Gowen v. Winfield*, Civ. No. 20-00247, 2022 WL 822172, at *3 (W.D. Va. Mar. 18, 2022) (noting the "[f]ailure to respond to an argument made in a dispositive pleading results in a concession of that claim" and collecting cases (citation omitted)); *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 728 (E.D. Va. 2012); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1246–47 (D. Md. 1997) (stating failure to meaningfully oppose or respond to an argument in a motion constitutes a waiver ); *Prince v. Library Co. of Balt. Bar*, Civ. No. 23-00362, 2023 WL 3847430, at *6 (D. Md. June 6, 2023) (finding plaintiff conceded arguments by failing to respond to defendants' arguments).

In any event, the record reflects Hartford, by contacting Atlas, made reasonable efforts to tender as Gates Hudson did not know who Atlas' insurance carrier was. ECF 73, at 16. Gates Hudson followed up numerous times, *see supra* Section I.A.5, and only two weeks lapsed before AXIS was on notice. The Court has no difficulty concluding that Gates Hudson acted "as soon as

practicable" as required by the AXIS Policy, particularly in light of the lack of opposition.  ECF 70-3, at 114.

Thus, because Gates Hudson put AXIS on notice of the potential that its claimed entitlement to defense and indemnification fell within the insurance policy Atlas purchased, and because that notice came only two weeks after Gates Hudson was served, Gates Hudson communicated a timely tender and triggered AXIS' duty to defend on September 3, 2020.

> ### 2. As the primary insurer, AXIS' duty to defend attached before Hartford's duty to defend.

When two insurers have a duty to defend, "the possibility of dual coverage . . . does not mean that both insurers are equally obligated to defend the underlying lawsuit." *Travelers*, 660 F. Supp. 3d at 194. Rather, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage . . . is determined by comparison of their respective 'other insurance' clauses. . . ." *Id.* (quoting *Sport Rock Intern., Inc.*, 878 N.Y.S.2d at 344). "These clauses can be used to establish which policy operates to provide *primary* coverage and which policy's coverage is *excess*." *Id.* (emphasis added). "The primary insurance must pay out first and excess insurance need only be paid out when the primary insurance has been exhausted up to the policy limit." *Id.* (quoting *Liberty Mut. Ins. Corp.*, 505 F. Supp. 3d at 276).

Hartford argues that AXIS conceded that its insurance policy was primary. ECF 80, at 2. In its cross-motion Hartford asked this Court to hold that AXIS had a primary and non-contributory obligation to defend Gates Hudson under its Policy, ECF 73, at 11–13, 25, and because AXIS did not contest this in its response, ECF 76, Hartford argues that AXIS has conceded this point. ECF 80, at 2–3 (citing *Yahya v. Barr*, Civ. No. 20-01150, 2021 WL 798873, at *2 (E.D. Va. Jan. 19, 2021). The Court agrees. *See Downer v. Prince George's Cnty. Bd. of Educ.*, Civ. No. 21-1618-

BAH, 2024 WL 3277563, at *7 n.7 (D. Md. July 2, 2024) (collecting cases); *see supra* Section III.C.1.ii (same).

In light of this concession and the fact that the Property Management Agreement explicitly indicates that Atlas' insurance will be primary, *see* ECF 70-3, at 94 § 8(c), the Court agrees that Hartford's duty to defend would only be triggered "when the primary insurance has been exhausted up to the policy limit." *Travelers*, 660 F. Supp. 3d at 194. It appears from this record that under AXIS' Policy, Hartford's duty to defend was triggered when AXIS reached its policy limit, which came when AXIS provided $1,000,000 at settlement negotiations on January 13, 2022. *See* ECF 70-3, at 302–08. Thus, AXIS' breach of its duty to defend occurred from when AXIS decided to deny or rebuff its duty to defend until January 13, 2022, when AXIS reached its policy limits. Additional discovery will likely reveal more precise dates for when coverage denial decisions were made by AXIS.

3.  Hartford is entitled to reimbursement of defense costs.

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." *Travelers*, 660 F. Supp. 3d at 195 (alteration in original) (quoting *Nat'l Union Fire Ins. Co.*, 962 N.Y.S.2d at 11.

AXIS argues that even if it owed a duty of defense to Gates Hudson and breached that duty, Hartford may not bring suit on behalf of Gates Hudson. ECF 76, at 7; ECF 70-1, at 10. Hartford was not in contract with AXIS and, according to AXIS, because New York law does not recognize the right of implied indemnification, Hartford has no entitlement to reimbursement of defense costs. ECF 76, at 7; ECF 70-1, at 10. AXIS cites two cases to support this assertion: *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53 (N.Y. App. Div. 2005) and *Titan*

34

*Indus. Servs. Corp. v Navigators Ins. Co.*, 203 N.Y.S.3d 267 (N.Y. App. Div. 2024). However, neither of these cases support the broad proposition AXIS submits to the Court.

In *Bovis Lend Lease LMB, Inc.*, the court held that the trial court erred when it found an insurer entitled to "all its defense costs, rather than for those incurred from the date on which the insurer received the tender of the underlying lawsuit." 806 N.Y.S.2d at 61. The Court fails to see how this disclaims an implied right of indemnification under New York law. *Cf. Titan Indus. Servs. Corp.*, 203 N.Y.S.3d at 270 (holding that insurer's duty to defend on a primary basis was triggered and plaintiffs were entitled to reimbursement of defense costs incurred from the date on which insurers received the tender in light of the lack of timely disclaimer); *see also id.* (noting that insurer seeking to deny coverage "was required under Insurance Law § 3420 (d) (2) to provide written notice of the disclaimer as soon as reasonably possible after receiving [a party's] tender in which it sought coverage under as an additional insured" (citing *Markevics v Liberty Mut. Ins. Co.*, 97 N.Y.2d 646, 648–49 (N.Y. App. Div. 2001))).

AXIS' position is untenable in light of *Travelers*, 660 F. Supp. 3d at 195 and *Technology Insurance Co., Inc. v. Philadelphia Indemnity Ins. Co.*, 642 F. Supp. 3d 445, 468 (S.D.N.Y. 2022). In *Travelers*, the primary insurer (Hudson) refused to provide a defense and the excess insurer (Travelers) was required to provide a defense in Hudson's absence. 660. F. Supp 3d. at 191. The *Travelers* court held Hudson was required to reimburse Travelers "for the defense costs (including reasonable attorneys' fees and costs) it has incurred." *Id.* at 195 (quoting *Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 616 (S.D.N.Y. 2017)). The same principle applies here, where AXIS, the primary insurer, has refused or rebuffed its duty to defend Gates Hudson, requiring Hartford, the excess insurer, to expend defense costs. Just like in *Travelers*, the Court finds that AXIS must reimburse defense costs to Hartford caused by AXIS' refusal to assume

its duty of primary defense. *See also Tech. Ins. Co., Inc.*, 642 F. Supp. 3d at 465 (S.D.N.Y. 2022) ("New York courts have described claims for payment between co-insurers that are not proportional or ratable, and are based on coverage for the same insured, as arising under the theory of recovery of implied indemnification.").

In sum, Hartford's Motion is granted. Hartford has demonstrated an entitlement to a declaration that (1) an effective tender occurred from Gates Hudson to AXIS by September 3, 2020; (2) AXIS is the primary insurer and Hartford is the excess insurer; (3) AXIS had a duty to defend Gates Hudson in the *Padmore* litigation; and (4) AXIS did not defend Gates Hudson in the *Padmore* litigation, and Hartford is entitled to reimbursement from the date of Gates Hudson's tender until January 13, 2022, when AXIS met its Policy limits.

## IV.    CONCLUSION

For the foregoing reasons, AXIS' Motion for Partial Summary Judgment, ECF 70, is **DENIED**. Hartford's Cross-Motion for Partial Summary Judgment on Tender Obligations, ECF 73, is **GRANTED**.

A separate implementing Order will issue.

Dated: <u>August 7, 2024</u>

<u>          /s/          </u>
Brendan A. Hurson
United States District Judge

36